**UNITED STATES of America, Appellee,**

v.

**John GAULTIER, Appellant.**

**No. 83–1350.**

United States Court of Appeals,
Eighth Circuit.

Submitted Oct. 13, 1983.

Decided Feb. 7, 1984.

Rehearing and Rehearing En Banc Denied March 19, 1984.

James R. Wyrsch, Koenigsdorf, Kusnetzky & Wyrsch, Kansas City, Mo., for appellant.

Robert G. Ulrich, U.S. Atty., W.D. Missouri, Kansas City, Mo., Linda M. Betzer, U.S. Dept. of Justice, Washington, D.C., for appellee.

Before LAY, Chief Judge, HEANEY and ARNOLD, Circuit Judges.

ARNOLD, Circuit Judge.

John Gaultier was indicted in September 1982, on seven counts of scheming to defraud his employer. Counts I, II, III, VI, and VII charged a violation of 18 U.S.C. § 1343 (wire fraud). Counts IV and V charged a violation of 18 U.S.C. § 1341 (mail fraud). Gaultier was tried on all seven counts, but the District Court[1] dismissed Counts I through V on a motion for directed verdict at the close of the government's case. Counts VI and VII were submitted to the jury, and Gaultier was convicted of wire fraud[2] on both counts. His principal contention on appeal is that a prejudicial variance existed between the allegations in the indictment and the proof at trial. We conclude that the variance was not prejudicial in light of the limiting instruction given to the jury, and that Gaultier's other allegations of error are without merit. We therefore affirm Gaultier's conviction, but direct

---

1. The Hon. Howard F. Sachs, United States District Judge for the Western District of Missouri.

2. 18 U.S.C. § 1343 (1976) provides that it is a crime for anyone "having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent ... representations," to transmit or cause to be transmitted "by means of wire, radio, or television communication ... any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice ...."

that his sentence be modified in one respect as outlined below.

## I.

In 1980, Gaultier was employed as branch manager of the Kansas City office of American Family Financial Services (AFFS). At the time in question, AFFS was mainly in the business of making loans to policy holders of American Family Insurance Company, of which AFFS was a wholly owned subsidiary. Gaultier's duties included arranging loans, approving credit, following up delinquencies, and operating the computer which linked the Kansas City branch with the company's home office in Madison, Wisconsin.[3]

The gravamen of the indictment was that Gaultier and Joseph A. Sivigliano devised a scheme to defraud AFFS, which began in March 1980 and continued until January 1981. The alleged scheme was described in paragraphs one through nine of Count I of the indictment, and those paragraphs were incorporated by reference into the other counts. According to the indictment, certain persons were induced to apply for automobile loans from AFFS and to make false statements to obtain the loans. Cars serving as collateral for the loans were to be purchased from Sivigliano or one of his companies. In some instances, no actual car purchase was involved, and Sivigliano provided fictitious vehicle identification numbers for use on the loan applications. In other instances, loan applicants did receive cars from Sivigliano, although he was unable to provide proper title to the vehicles. In either case, AFFS was deprived of its rightful security interest in the automobiles involved. Gaultier allegedly approved the loan applications knowing they were fraudulent. He later used wire communications, that is, his computer hookup with Madison, Wisconsin, to further the scheme by covering up the existence and delinquency of certain loans.

Counts I through V concerned several loans AFFS made in May and June of 1980 with Gaultier's approval. The government presented extensive testimony about these transactions which indicated Sivigliano's intent to defraud AFFS. Very little of the evidence suggested that Gaultier knew of the fraudulent nature of the loans.

Counts VI and VII of the indictment concerned loans made to June Brosnahan. Brosnahan took out three automobile loans from AFFS and received three checks. In May 1980, she received a check for $2,000 to finance the purchase of a Chrysler from Sivigliano. She was dissatisfied with the car and returned it to Sivigliano several months later in exchange for a Datsun. She then applied for another loan from AFFS, and in August 1980 received a second check for $2,736.26. Brosnahan endorsed the check and gave it to Sivigliano to pay for the Datsun. The Datsun repeatedly broke down, and in October 1980 Brosnahan returned it and obtained a 1979 Ford Mustang from Sivigliano. The Mustang was also financed through AFFS, and Brosnahan received a third check for $3,213.74. Again, she endorsed the check and turned it over to Sivigliano. Brosnahan and Sivigliano thus received a total of $7,950.

Brosnahan had mechanical problems with the Mustang, but was unable to locate Sivigliano. She then called Gaultier, who told her to bring the car to the AFFS office, and he would have it repaired. After she did so, the dealer from whom Sivigliano purchased the Mustang notified the AFFS office that Sivigliano had given a bad check for the car. The dealer subsequently repossessed the car from the AFFS office. At that point, Brosnahan had no automobile, but still had a rather substantial debt to AFFS.

On October 8 and again on November 24, 1980, someone at the Kansas City office—

---

**3.** The AFFS computer in Madison, Wisconsin stored all information concerning loan accounts, including data about payments made and irregularities in the collection of loans. Information could be entered into the computer either at Kansas City or Madison. The computers were linked via telephone lines, and information could be transmitted back and forth by the telephone company either through wires, microwave, or satellite relay.

allegedly Gaultier—made two "TC450"[4] computer entries that reduced the Brosnahan loan balance to zero. The October entry effectively "forgave" the Brosnahan loan on the Chrysler. The November entry removed the remainder of her debt from AFFS computer loan records. The computer entries were transmitted from the Kansas City office of AFFS to the home office in Madison, Wisconsin. AFFS officials began an investigation after receiving the November computer entry. Gaultier was the only employee in the Kansas City office with authority to approve TC450 entries. Notes were found on his desk in his handwriting indicating that a TC450 entry should be made on November 24, 1980, on the Brosnahan account. All the other AFFS employees testified that they had not made the entries in question. The October computer entry was the basis of the charge in Count VI of the indictment; the November entry was the basis of Count VII.

All counts of the indictment charged both Gaultier and Sivigliano. Sivigliano pleaded guilty prior to trial. The government did not call Sivigliano as a witness. At trial, Gaultier offered no evidence and rested his case at the close of the government's evidence.

After directing a verdict of acquittal on Counts I through V, the District Court twice instructed the jury to disregard all evidence pertaining to those counts. The jury returned its guilty verdict on December 16, 1982. Gaultier was sentenced to eighteen months' imprisonment on Count VI, with all but 45 days suspended, to be followed by two years on probation. The same sentence was imposed on Count VII, to be served concurrently with the sentence on Count VI. As a special condition of his probation under Count VII, Gaultier was

ordered to make restitution to AFFS in the amount of $8,240.23, the total of the three Brosnahan loans plus certain expenses. Gaultier's motion for a new trial was denied, and this appeal followed.

## II.

Gaultier argues that the indictment charged a single overall scheme in which both he and Sivigliano were parties, whereas the evidence at trial showed multiple schemes, and the scheme underlying Gaultier's conviction did not involve Sivigliano at all. The government presented no evidence indicating that Sivigliano participated with Gaultier in making the false computer entries. Gaultier submits that a fatal variance thus existed between the indictment and the proof, warranting reversal of his conviction.

 We agree that a variance existed between the indictment and the proof. However, variance alone is not fatal to a judgment of conviction. "The true inquiry . . . is not whether there has been a variance of proof, but whether there has been such a variance as to 'affect the substantial rights' of the accused." *Berger v. United States,* 295 U.S. 78, 82, 55 S.Ct. 629, 630, 79 L.Ed. 1314 (1935). Reversal is required only if we "cannot say, with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error." *Kotteakos v. United States,* 328 U.S. 750, 765, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946).

Gaultier maintains that the variance was indeed prejudicial and affected his substantial rights. In particular, he contends that the evidence concerning the fraudulent loan transactions alleged in Counts I through V[5]

---

4. AFFS computer users had to use certain "transaction codes" (TC) to enter data. Each code instructed the computer to perform a particular function. TC450 was intended to handle employee errors and to make small balance adjustments. Essentially, a TC450 entry turned accounts due into accounts paid.

5. Gaultier also suggests that the government acted in bad faith in presenting this evidence.

He points out that right before trial started, the District Court suggested to the government that it not pursue Counts I through V. The decision to go forward with these later-dismissed counts does not, however, seem to have been taken in bad faith. Counsel for the United States stated at the oral argument before this Court that one of her witnesses failed to testify in accordance with her expectations, based on a statement the witness made to her

had a "spillover" effect. He points out that these transactions were not shown to be related to him, and claims that he suffered from the "unwarranted imputation of guilt from others' conduct." *Kotteakos v. United States, supra,* 328 U.S. at 777, 66 S.Ct. at 1253.

In *United States v. Jackson,* 696 F.2d 578 (8th Cir.1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 1531, 75 L.Ed.2d 952 (1983), this Court acknowledged that when a single conspiracy is alleged and proof at trial tends to show the existence of multiple conspiracies, a defendant's rights may be affected by the introduction of evidence of crimes unrelated to him. In such cases, the adequacy of a trial judge's instructions is critically important in evaluating whether confusion or prejudice resulted from the transference of guilt from one conspiracy to another. *Id.* at 584. See also *United States v. Snider,* 720 F.2d 985, 989–90 (8th Cir. 1983). We noted in *Jackson* that juries should be specifically instructed to compartmentalize evidence of separate conspiracies and admonished not to consider evidence of others' wrongdoing when determining the guilt of a defendant. *United States v. Jackson, supra,* 696 F.2d at 585–86.

█ In the present case, after directing a verdict on the first five counts, the trial judge carefully instructed the jury to disregard all evidence pertaining to those counts. He distinguished the scheme concerning the establishment of the loans from the scheme relating to the computer entries, and detailed which evidence was to be disregard-ed. He then specifically instructed the jury as follows:

> As I have stated, your task is simplified. You will confine your decision to Count VI and Count VII relating to the TC450 entries in October and November, 1980, and you will direct your attention to Mr. Gaultier's connection, if any, to those entries.

The jury received this limiting instruction at the close of the government's case and again at the end of trial. Other instructions were also tailored to confine the jury's deliberations. When the trial judge read Counts VI and VII of the indictment, he deleted the paragraph that incorporated by reference the description of the overall scheme. The instruction describing the charges stated that Counts VI and VII alleged that "John Gaultier caused the transmittal by means of wire communications of certain signals through interstate commerce concerning the American Family Financial Service account of June Brosnahan." Another instruction defined "scheme" to include "any plan or course of action intended to deceive others," and contained no mention of joint effort. A theory-of-defense instruction indicated that unless the jury found beyond a reasonable doubt that Gaultier had not made the two TC450 entries in good faith, they must acquit him.

The District Court's instructions thus comported with the requirements set forth in *Jackson,* and were sufficient to cure any potential prejudice and prevent undue juror confusion.[6] The instructions were clear,

---

before trial. Gaultier's counsel did not dispute this contention, and we accept the government's representation. We note, however, that if the government had gone forward with its proof on Counts I through V knowing it would not have sufficient evidence to prove these counts, it would have been necessary to reverse the conviction on Counts VI and VII.

**6.** On this basis we distinguish two recent Ninth Circuit cases on which Gaultier relies. In *United States v. Mastelotto,* 717 F.2d 1238 (9th Cir.1983), and *United States v. Miller,* 715 F.2d 1360 (9th Cir.1983), the Court overturned mail and wire fraud convictions where defendants alleged that a variance existed between the unitary scheme charged in the indictment and

the proof offered by the government at trial. In *Mastelotto,* the Court determined that the evidence was sufficient to permit the question of the existence of a single unitary scheme to go to the jury. The trial court failed, however, to give an instruction that each juror must find the defendant guilty of participation in the same single scheme that had been charged in the indictment. In effect, the jurors were told they could convict each of the defendants for participating in a scheme to defraud even though that scheme was substantially different from the unitary scheme charged by the Grand Jury. The Ninth Circuit concluded that the instructions were therefore improper and prejudicial, and reversed the defendants' conviction.

and it must be presumed that the jury conscientiously followed them. See *Shotwell Manufacturing Co. v. United States*, 371 U.S. 341, 367, 83 S.Ct. 448, 463, 9 L.Ed.2d 357 (1963). This presumption is particularly appropriate here, where only one defendant was on trial, the schemes were easily distinguishable, and the evidence was amenable to segregation in the minds of the jury. We therefore conclude that Gaultier has shown no substantial prejudice from the variance, and reversal on this basis is unwarranted.

### III.

■ Gaultier raises a number of other issues on appeal. We have considered all these allegations, and find them to be without merit. In particular, we hold that sufficient evidence was presented to show Gaultier's guilt on Counts VI and VII, and to show the use of wires in interstate commerce.[7] Moreover, the doctrines of collateral estoppel and double jeopardy do not apply, as Gaultier contends, to require acquittal on Counts VI and VII. Nor did the District Court err in allowing the jury to convict appellant of attempted wire fraud for the simple reason that the jury was not allowed to do so: Gaultier was convicted of completed wire transmissions in furtherance of an attempted scheme to defraud AFFS. We also conclude that the govern-

ment's allegedly improper remark in its opening statement about Gaultier's receiving kickbacks was not unduly prejudicial, that the admission of testimony concerning a manual used by AFFS was not erroneous, and that the indictment was not defective.

### IV.

■ We do agree that appellant should be granted relief in one respect. The sentence imposed on Gaultier requires him, as a condition of probation, to make restitution to AFFS for the money it lost on the June Brosnahan account. The record indicates, however, that AFFS has filed suit against Brosnahan to recover the amount owed on the three car loans. We therefore direct that Gaultier's sentence be modified to provide that if AFFS recovers anything in its civil action against Brosnahan, Gaultier's obligation to make restitution is to be reduced *pro tanto*.

Accordingly, we affirm with directions to modify the sentence.

It is so ordered.

---

In *Miller,* the defendant was convicted of mail fraud for devising a scheme to defraud his insurer by knowing of and consenting to a burglary and then inflating the amount of his claimed loss. At trial, the government showed that Miller had, in fact, inflated his claim, but no evidence was presented to show he knew of or consented to the burglary from which the claim arose. The Ninth Circuit vacated Miller's conviction, holding that he had been convicted for an offense other than the one for which he was indicted.

Both cases thus address an issue similar to the issue in the present case. Yet neither involved a directed verdict on those aspects of the scheme not proved at trial, followed by an explicit limiting instruction designed to cure any potential prejudice accruing from the alleged variance.

7. As part of his argument that a variance existed between the indictment and proof, Gaultier pointed out that the indictment alleged only

that wires were used in interstate commerce, whereas evidence at trial indicated that the transmissions in question could have gone by wire, microwave, or satellite. Gaultier acknowledges that radio and television as well as wire communications are covered by the wire-fraud statute. He contends, however, that neither the indictment nor the evidence presented at trial supported the trial court's instruction to the jury that radio communication includes microwave and satellite communication. In *United States v. Bohr,* 581 F.2d 1294, 1303 (8th Cir.), *cert. denied,* 439 U.S. 958, 99 S.Ct. 361, 58 L.Ed.2d 351 (1978), we determined that microwave transmissions were included within the purview of the wire-fraud statute. Gaultier has offered no authority and we have found none to suggest that satellite communications should not also be encompassed by the statute. We reject Gaultier's argument that reversal is required either on the basis that the alleged variance was prejudicial, or that insufficient evidence supported the jury instruction.