UNITED STATES of America, Appellee,

v.

**Loren M. WELSAND, Appellant.**

No. 93–3080.

United States Court of Appeals, Eighth Circuit.

Submitted March 16, 1994.

Decided April 28, 1994.

Rehearing and Suggestion for Rehearing En Banc Denied June 13, 1994.

---

Mark D. Nyvold, St. Paul, MN, argued, for appellant.

Richard George Morgan, Minneapolis, MN, argued (Francis X. Hermann and Richard G. Morgan, on the brief), for appellee.

Before BEAM, Circuit Judge, BRIGHT, Senior Circuit Judge, and MORRIS SHEPPARD ARNOLD, Circuit Judge.

BEAM, Circuit Judge.

We are asked to decide the amount of restitution that the district court may impose when some of the acts constituting a mail fraud scheme antedate the indictment by more than eleven years. The district court determined that all amounts received after the commencement of the fraud are subject to a restitution order. We affirm.

## I. BACKGROUND

On August 20, 1981, appellant Loren M. Welsand applied for pension benefits from the United States Veterans Administration, later the United States Department of Veterans Affairs (VA). The VA offers one pension program, open to those persons honorably discharged from a period of war time service who are disabled and who demonstrate financial eligibility. In his application for pension benefits dated August 20, 1981, Welsand claimed that he was not employed after February 1981 and that he had stocks, bonds and bank deposits worth only $500. However, appellant had substantial employment after February of 1981 and held over $16,000 of stock, bonds and bank accounts at the time of his application. He also had investments in real estate.

As a result of these misrepresentations, the VA found Welsand qualified to receive a pension. After this initial determination of pension eligibility, the VA would send Welsand an annual questionnaire, as long as Welsand had verified his continued eligibility for pension benefits on the prior year's questionnaire. This questionnaire, VA Form 21–0517, is formally titled a "Pension Eligibility Verification Report" and informally called an "EVR." On each annual EVR, from 1983 to 1991, appellant reported that he had earned no employment income, owned no stocks, bonds or bank accounts, received no social security payments, received no rental income, and lived with his spouse. In fact, Welsand worked regularly from 1981 to 1985, and again in 1987; received monthly social security benefits beginning in 1985; owned stocks, bonds and bank accounts worth in excess of $100,000 during much of this period; had rental income; and did not live with his spouse after 1986.

Welsand's misrepresentations on his EVR made the receipt of each subsequent year's benefits possible, and automatically caused the VA to send out a new EVR each year. As a result, Welsand received $95,130.58 in pension benefits between 1981 and 1991.

The grand jury returned a nine-count indictment against Welsand. After trial by jury, appellant was convicted on all counts. The district court imposed incarceration, supervised release, a special assessment and ordered Welsand to pay restitution in the amount of $95,130.58.

Only the first three counts of conviction brought under 18 U.S.C. § 1341 are relevant to this appeal. Count one recites in detail the entire scheme to defraud. Counts two and three reallege this scheme by way of incorporation. The indictment alleges that the scheme commenced on August 20, 1981, the date of Welsand's initial application for pension benefits. Each count states the total amount of pension money received by Welsand through the lifetime of the fraudulent scheme but recites only one specific year's mailing from the VA as a specific act in execution of the "scheme and artifice to defraud." Superseding Indictment at 1–5. Although, as indicated, similar mailings from the VA were induced each year commencing in 1983, the three EVRs specifically mentioned in the first three counts of the indictment were posted within the five-year limitation period established by 18 U.S.C. § 3282.

Welsand contends that, for restitution purposes, he is liable only for pension payments received in the three yearly periods preceding the mailings recited in the indictment, an amount equalling $27,576. The government argues that the entire $95,130.58 is due.

## II. DISCUSSION

This case is controlled by the restitution provisions of the Victim and Witness Protection Act of 1982 (VWPA), 18 U.S.C. §§ 3663, 3664 (amended 1990) (formerly 18 U.S.C. §§ 3579, 3580) as interpreted by *Hughey v. United States*, 495 U.S. 411, 110 S.Ct. 1979, 109 L.Ed.2d 408 (1990). Hughey was indicted for three counts of theft by a United States Postal Service employee and three counts of unauthorized use of credit cards. He entered a plea to one count. The restitution ordered included losses stemming from the other counts. The Supreme Court reversed, concluding "that the loss caused by the [specific] conduct underlying the offense of conviction establishes the outer limits of a restitution order." *Id.* at 420, 110 S.Ct. at 1984. We do not believe, however, that *Hughey* requires reversal of the restitution order in this case.

The government argues that the 1990 amendments to the VWPA undermine Welsand's reliance on *Hughey*. Specifically, the government notes that "a victim of an offense that involves as an element a scheme ... means any person directly harmed by the defendant's criminal conduct in the course of the scheme." Section 3663(a)(2).[1] While we agree that this post-*Hughey* statutory language shows congressional interest in all "conduct in the course of the scheme," we do not view it as vitiating *Hughey* to the extent suggested by the government. The language mainly expands the definition of the term "victim." It does not explicitly extend the contours of the word "offense."

Even so, we think that *Hughey* does not cut the narrow swath that Welsand contends. We must analyze whether the "offense" described in each count of Welsand's indictment reaches out to include all acts encompassed within the "scheme or artifice to defraud" described in 18 U.S.C. § 1341. We believe it does.

We recognize that our sister circuits have painted in varying hues in their attempt to interpret *Hughey*. In *United States v.*

*Streebing*, 987 F.2d 368 (6th Cir.1993), *cert. denied,* —— U.S. ——, 113 S.Ct. 2933, 124 L.Ed.2d 683 (1993), a mail fraud scheme involving both social security and private checks, the Sixth Circuit limited restitution to checks received as part of the conduct from the offenses of conviction, reversing an award that included payments made in the course of acquitted counts. The Seventh Circuit, on the other hand, affirmed a restitution award that "embraced the entire scheme" even transactions beyond those alleged in the counts of conviction. *United States v. Turino*, 978 F.2d 315, 317 (7th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 2969, 125 L.Ed.2d 668 (1993).

The *Turino* court, interpreting *Hughey*, noted that:

> because the scheme is an element of the offense of mail fraud, a conviction for mail fraud can support a conviction for a broad scheme even though the defendant is not specifically convicted for each fraudulent act encompassed within this scheme. And [our] decisions indicate that it is appropriate to look to the indictment as an indication of the scope of the scheme.

*Id.* at 319. We agree with this analysis and find it applicable to this case.

Welsand's scheme commenced on August 20, 1981. It continued to thrive over the years as a self-perpetuating juggernaut with Welsand's fraudulent answers in each year's EVR fueling the flow of money from the VA. Welsand's interrelated acts constituted the "conduct underlying the offense[s] of conviction" and established the outer limits of the restitution order. *Hughey*, 495 U.S. at 420, 110 S.Ct. at 1984.

## III. CONCLUSION

Accordingly, we affirm.

---

1. 18 U.S.C. § 3663(a)(2) states:
   For the purposes of restitution, a victim of an offense that involves as an element a scheme, a conspiracy, or a pattern of criminal activity means any person directly harmed by the defendant's criminal conduct in the course of the scheme, conspiracy, or pattern.