**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Jan MANZER, doing business as V.C. Hacker, also known as Don Davis, Defendant–Appellant.**

No. 95–1455.

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 12, 1995.

Decided Oct. 27, 1995.

224

Rita Looney, argued, Little Rock, AR, for appellant.

Claude S. Hawkins, argued, Fort Smith, AR, for appellee.

Before FAGG, FLOYD R. GIBSON, and HENLEY, Circuit Judges.

FLOYD R. GIBSON, Circuit Judge.

Appellant Jan Manzer appeals his convictions [1] for two counts of mail fraud in violation of 18 U.S.C. §§ 1341 and 1342 (1988), two counts of wire fraud in violation of 18 U.S.C. §§ 1343 and 1342 (1988), and one count of copyright infringement in violation of 17 U.S.C. § 506(a) (1988). Manzer also appeals his sentence under the United States Sentencing Guidelines. We have jurisdiction

---

1. The Honorable Jimm Larry Hendren, United States District Judge for the Western District of Arkansas.

over this appeal pursuant to 28 U.S.C. § 1291 (1988), and we affirm.

## I. BACKGROUND

This appeal deals with the business of unauthorized decryption of premium channel broadcasts. Premium channel broadcasters such as HBO transmit programming to subscribing individuals and cable affiliates across the United States via satellite. In order to prevent nonsubscribers from accessing their programming, they encrypt or "scramble" their electromagnetic broadcast signals. A descrambling device such as the Videocipher II unit (VCII unit), manufactured and sold by General Instrument Corporation (General Instrument), is necessary to decrypt the scrambled signals. When a viewer subscribes to a premium channel, the premium channel broadcaster programs that viewer's electronic "unit address" into its satellite transmissions. Each VCII unit has its own unique coded "unit address" contained within the copyrighted "Controlled Microprocessor Software" stored in an integrated circuit identified as the "U–30 Chip" which ensures that only authorized addresses are able to decrypt the broadcast transmissions.

In 1988, General Instrument hired a private investigator, Robert Bottorff, to investigate persons involved in the illegal modification of VCII units. Bottorff obtained a copy of *The Blank Box Newsletter*, an underground newsletter devoted to the unauthorized decryption of cable satellite transmissions, containing an advertisement by "V.C. Hacker." Bottorff called the number listed in the advertisement and spoke to an individual who called himself Don Davis. That individual was later identified as Jan Manzer. During the course of a subsequent phone conversation on April 18, Manzer agreed to modify five VCII units to enable them to receive encrypted broadcasts in exchange for $525.00 per unit. Bottorff shipped the units along with the proper payment to an address in Little Rock, Arkansas provided by Manzer. Manzer shipped the five VCII units back to Bottorff a few days later, modified as agreed.

On April 27, Manzer and Bottorff made plans over the phone for Bottorff to deliver an additional 270 VCII units to Manzer's place of business for modification. In exchange, Manzer was to receive three Videocipher units for each one modified. On May 4, Bottorff delivered seventy VCII units to Manzer in Hot Springs, Arkansas. Manzer modified the units as agreed and returned them to Bottorff the next day. Later that day the FBI executed a search warrant on Manzer's place of business, seizing computer equipment, computer chips, computer discs, modified and unmodified VCII modules, advertisements, and business records.

On June 19, 1992, a six-count superseding indictment was returned against Manzer. Counts I and II charged him with mail fraud for placing advertisements in the March and April 1988 issues of the *Blank Box Newsletter* advertising products and services used for the unauthorized decryption of cable satellite programming as part of a scheme or artifice to defraud General Instrument, HBO, and others in violation of 18 U.S.C. §§ 1341 and 1342. Counts III and IV charged Manzer with two violations of wire fraud based on the two telephone conversations between Manzer and Bottorff occurring on April 18 and 27, 1988, in violation of 18 U.S.C. §§ 1343 and 1342. Count V charged Manzer with knowingly selling and servicing VCII units modified for the unauthorized decryption of cable satellite programming in violation of 47 U.S.C. § 605(e)(4). Count VI charged Manzer with knowingly infringing a copyright for the purpose of commercial advantage or private financial gain by copying the copyrighted "Controlled Microprocessor Software" contained in the U–30 Chip in violation of 17 U.S.C. § 506(a). Count V was dismissed prior to trial because 47 U.S.C. § 605(e)(4) did not become effective until January 1, 1989, more than six months after the charged conduct took place.[2]

It was established at trial that Manzer had been operating a business out of Hot Springs, Arkansas since August of 1987 under the alias "V.C. Hacker." As part of his business, Manzer sold cloned chips containing the unit addresses from authorized VCII

---

**2.** *See* Satellite Home Viewer Act of 1988, Pub.L. No. 100–667, §§ 205–206, 102 Stat. 3960.

units to both individual customers and satellite dealers. By replacing the existing U–30 chip with a "cloned" chip containing an authorized unit address, unauthorized viewers were able to receive premium channel broadcasts without having to pay the required subscription fee. Manzer's business also sold "cloning packages" or discs containing the information and unit addresses needed to clone additional counterfeit chips. Dealers who did not wish to modify their own VCII units were able to send their VCII circuitboards directly to Manzer, whose technicians would then modify them and return them to the dealer.

After a three day jury trial, Manzer was convicted of all five remaining counts. Applying the 1987 version of the United States Sentencing Guidelines, the district court sentenced Manzer to forty-six months imprisonment to be followed by a three-year term of supervised release and ordered him to pay $2.7 million in restitution. On appeal, Manzer challenges the sufficiency of the evidence supporting all five of his convictions, the district court's calculation of the amount of loss, the district court's restitution order, and the district court's imposition of three years supervised release. Manzer also claims that he was denied effective assistance of counsel in violation of the Sixth Amendment of the United States Constitution. We address each issue *seriatim.*

## II. DISCUSSION

### A. Sufficiency of the Evidence

■ Manzer challenges the sufficiency of the evidence supporting each of his convictions. "When reviewing such a claim, we consider the evidence in the light most favorable to the government, giving it the benefit of all favorable inferences." *United States v. Quintanilla,* 25 F.3d 694, 699 (8th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 457, 130 L.Ed.2d 365 (1994). A conviction will be upheld unless no reasonable factfinder could have found Manzer guilty beyond a reasonable doubt. *Id.*

### 1. Mail and Wire Fraud

■ Intent to defraud is an essential element to establishing both the substantive mail and wire fraud counts. *United States v. Andrade,* 788 F.2d 521, 527 (8th Cir.), *cert. denied,* 479 U.S. 963, 107 S.Ct. 462, 93 L.Ed.2d 408 (1986). Manzer argues that the government failed to prove that he acted with intent to defraud because 47 U.S.C. § 605(e)(4), the federal statute criminalizing the knowing manufacture, modification, and sale of devices used for the unauthorized decryption of satellite cable programming, was not in effect at the time the allegedly fraudulent acts took place.

■ Manzer's argument is misdirected. Mail and wire fraud are substantive offenses which do not depend on the violation of another statute. In order to sustain charges of mail or wire fraud, the government need only prove: (1) the existence of a scheme to defraud, and (2) the use of the mails or wires for purposes of executing the scheme. *Id.* As we observed in *United States v. Costanzo,* 4 F.3d 658, 664 (8th Cir.1993), an appeal involving mail and wire fraud convictions stemming from the diversion of pharmaceuticals, "[t]he critical inquiry is not whether defendants intended to break the law, but, rather, whether they intended to defraud drug manufacturers." It is therefore immaterial whether Manzer intended to violate 47 U.S.C. § 605. The relevant inquiry is whether Manzer acted with intent to defraud General Instrument and premium channel producers such as HBO who rely on Videocipher technology to protect their signals from non-paying viewers.

■ While Manzer concedes that he sold the materials and information needed to "modify" and "clone" VCII units to receive premium channel broadcasts without having to pay the subscription fees, he contends that the government failed to prove that he did so with the requisite intent to defraud. Manzer essentially argues that he could just as easily have intended to sell the technology for non-fraudulent testing or educational purposes.

It was established at trial that Manzer knew the computer chips and discs he sold would allow his customers, many of whom were cable dealers, to modify VCII units to receive premium pay channel broadcasts without having to pay the required subscrip-

tion fees. It was also established that technicians directly under Manzer's supervision and in his employ similarly modified and resold large numbers of VCII units. Manzer also took great pains to conceal both the location of his business (employing a Little Rock address while actually working out of Hot Springs) and his identity (operating under the aliases V.C. Hacker, Don Davis, and J.J. Sims). The type of technology sold, the volume of sales, the nature of his clientele, the level of secrecy employed, and the fact that his operation directly modified VCII's to intercept decrypted broadcast signals all support the reasonable inference that Manzer acted with intent to defraud. We conclude that the evidence of Manzer's intent to defraud was sufficient. *See United States v. Coyle,* 943 F.2d 424 (4th Cir.1991) (affirming the mail and wire fraud convictions of defendant who manufactured and distributed descramblers intended to enable his customers to receive cable programs without paying for them); *United States v. Behr,* 33 F.3d 1033, 1035 (8th Cir.1994) ("Direct evidence of intent, however, is not required; the requisite intent may be inferred from all the facts and circumstances surrounding the defendant's actions.").

### 2. Copyright Infringement

Manzer also challenges the sufficiency of the evidence supporting his conviction for knowing infringement of a copyright in violation of 17 U.S.C. § 506(a). In order to convict Manzer under 17 U.S.C. § 506(a), the government had to prove: (1) that the computer program in the satellite descrambler modules had a valid copyright; (2) that Manzer infringed on the copyright by preparing one or more derivative works or computer programs, or by reproducing or selling unauthorized copies of the computer program; (3) that Manzer willfully infringed on the copyright; and (4) that the act of infringement was for commercial advantage or private financial gain. *United States v. Hux,* 940 F.2d 314, 319 (8th Cir.1991), *overruled in part on other grounds by United States v. Davis,* 978 F.2d 415, 416 (8th Cir.1992) (*en banc*). Manzer asserts that the government failed to prove the second and third elements of the offense.

In regard to the second element, Manzer argues that the government failed to produce sufficient evidence that the computer programs he sold were derivative of the copyrighted "Controlled Microprocessor Software" contained in the U–30 chip. This argument fails to take into account the testimony of Brant Candelore, an electrical engineer employed by General Instrument, who testified that the computer files sold by Manzer were more than seventy-percent similar to the copyrighted software. As such, the jury's determination that the computer programs sold by Manzer were derivative of copyrighted material is supported by sufficient evidence. *Hux,* 940 F.2d at 319.

Manzer also challenges the sufficiency of the evidence supporting the third element of the statute. Manzer claims that he is a businessman, not a technician, and had no notice that the contents of the U–30 chip were copyrighted. As such, he argues that the government produced no evidence that he willfully infringed on the copyrighted software. It was established at trial, however, that the sealed plastic module containing the copyrighted operating software utilized in the U–30 chip bore a legible copyright notice. In addition, the software program itself contained a copyright notice capable of being read through the use of either a common "debug" program or "DUMP" file. Were this a civil suit seeking actual or statutory damages for copyright infringement, either one of these methods would be sufficient to place Manzer on notice that the contents of the U–30 chip were copyrighted material for purposes of refuting a defense based on innocent infringement. *See* 17 U.S.C. § 401(c) and (d) (1988); 37 C.F.R. § 201.20(a) and (g)(1), (4) (1987). We believe that a reasonable jury could also find this type of notice sufficient to alert Manzer to the fact that the contents of the U–30 chip were copyrighted for purposes of proving willful infringement under 17 U.S.C. § 506(a). *United States v. Cross,* 816 F.2d 297, 303 (7th Cir.1987) ("In order to understand the meaning of criminal copyright infringement it is necessary to resort to the civil law of copyright.").

The record also supports the reasonable inference that Manzer had actual notice that the software contained in the U–30 chip was copyrighted material. Specifically, it was established at trial that Manzer, under his alias "V.C. Hacker" in a purported interview published in the *Blank Box Newsletter*, acknowledged the illegality of selling, leasing, or giving away a copy of copyrighted material such as that contained in the U–30 Chip.[3] Consequently, we find the evidence of Manzer's willful infringement to be sufficient.

## B. Amount of Loss

■ Manzer next argues that the district court erred in determining the amount of loss. The district court calculated the total loss to be $2.7 million and assessed Manzer a ten-point increase under the 1987 version of the Sentencing Guidelines. USSG § 2F1.1(b)(1). Based on financial records seized from Manzer's place of business, the district court estimated that Manzer sold 270 modification/cloning packages to various satellite dealers and individual customers. The court then estimated that each package was worth $10,000.00 by reference to the minimum statutory award authorized under 47 U.S.C. § 605(e)(3)(C)(i)(II) ($10,000.00). That particular subsection allows a party in a civil suit to recover fixed statutory damages ranging from $10,000.00 to $100,000.00 per violation of 47 U.S.C. § 605(e)(4) in lieu of actual damages. Manzer argues that the district court erred in basing the amount of loss on a fixed civil statutory damages provision rather than the actual or intended amount of loss. "Amount of loss is a factual determination that we review only for clear error." *United States v. French,* 46 F.3d 710, 715 (8th Cir.1995).

We are aware of the difficulty in calculating the amount of loss in a case such as this involving the sale and distribution of modification and cloning packages to multiple dealers who may have in turn further disseminated the pirating technology. The district court's calculation of the amount of loss, how-

ever, "need not be precise." USSG § 2F1.1, comment. (n.8). "The court need only make a reasonable estimate of the range of loss, given the available information." *Id.* We believe that the district court's estimation of the amount of loss is more than adequately supported on the record by the testimony of Susan Byrne, an HBO analyst who conservatively projected the actual loss to be $6,890,000.00. That figure itself was a conservative estimate of actual revenue loss to HBO alone (notwithstanding losses to other premium broadcasters) based on her review of revenue records and client lists seized from Manzer's place of business and her projections of dealer replication. We find no clear error. *United States v. Abadia,* 949 F.2d 956, 958 n. 12 (8th Cir.1991) (this Court may affirm on any basis supported by the record), *cert. denied,* 503 U.S. 949, 112 S.Ct. 1510, 117 L.Ed.2d 648 (1992).

■ In a related argument, Manzer claims that the district court's use of the post–1988 amendment version of 47 U.S.C. § 605(e)(3)(C)(i)(II) violated the ex post facto prohibition of the United States Constitution.[4] Prior to the 1988 amendments which became effective January 1, 1989, 47 U.S.C. § 605(d)(3)(C)(i)(II) provided for civil statutory damages of not less than $250.00 and not more than $10,000.00 per violation of that section. The post-amendment version raised the statutory damages range from not less than $10,000.00 to not more than $100,000.00. *See* Satellite Home Viewer Act of 1988, Pub.L. No. 100–667, § 205, 102 Stat. 3959–60.

In *Miller v. Florida,* 482 U.S. 423, 430, 107 S.Ct. 2446, 2451, 96 L.Ed.2d 351 (1987), the Supreme Court set out a two-part test to determine whether a criminal law violates the ex post facto clause: (1) it must apply to events that occurred before its enactment; and (2) it must disadvantage the affected offender. Manzer's ex post facto argument fails under both prongs of the *Miller* test.

First, the amended version of § 605 providing for civil damages for copyright in-

---

**3.** Q: "Is it legal to copy a chip in a Videocipher unit?"
A: "... You can't sell, lease, or give away a duplicated chip produced from a copyrighted

original that you own. It's against the law...." [tr. 432.]

**4.** "No Bill of Attainder or ex post facto Law shall be passed." U.S. CONST. art. I, § 9, cl. 3.

fringement did not control here, but was merely referred to by the district court as a means of estimating the loss caused by Manzer's criminal actions. Thus, this case does not present the situation of a statute being applied to punish conduct occurring before its enactment.

Second, Manzer has failed to show how he was disadvantaged by the court's reference to the post–1988 amendment version of the statute. The $10,000.00 per violation figure employed by the district court was also within the range of the pre–1988 amendment version of the statute. This precludes any potential argument that Manzer's sentence was enhanced by increasing the amount of loss through the district court's reference to the post–1988 amendment version of 47 U.S.C. § 605.

Because the evidence supported a finding that the actual loss caused by Manzer's conduct was far greater than $2.7 million, because the civil statute in question was merely referred to for guidance in measuring loss but did not directly control, and because in any event the amount of loss determined was consistent with the statute in effect at the time of Manzer's conduct (and before the statute's amendment) we find no ex post facto violation.

## C. Restitution

■ The district court ordered Manzer to pay $2.7 million in restitution pursuant to the Victim and Witness Protection Act of 1982 (VWPA), 18 U.S.C. §§ 3663, 3664 (amended 1990) (formerly 18 U.S.C. §§ 3579, 3580). Manzer argues that the district court erred in several respects. We note that "[d]istrict courts have wide discretion in sentencing, including the ordering of restitution." *United States v. Bartsh*, 985 F.2d 930, 933 (8th Cir.1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 1204, 127 L.Ed.2d 551 (1994). Because Manzer failed to object to the restitution order at the sentencing hearing, we review this issue for "plain error resulting in a

miscarriage of justice." *United States v. Wivell*, 893 F.2d 156, 161 (8th Cir.1990) (quotation omitted).

### 1. Ability to Pay

■ Manzer argues that the district court erred by failing to make any specific findings regarding his ability to pay $2.7 million.[5] The sentencing transcript shows, however, that the district court based its decision to impose restitution on the presentence report's assessment of Manzer's high earning potential, particularly his proven business acumen and history of successful entrepreneurship. *See United States v. Rogat*, 924 F.2d 983, 985 (10th Cir.) (restitution order may be upheld solely on defendant's earning potential), *cert. denied*, 499 U.S. 982, 111 S.Ct. 1637, 113 L.Ed.2d 732 (1991).

■ Even absent such findings, Manzer's argument is unavailing. While we encourage sentencing courts to make specific findings of fact regarding the defendant's financial resources, financial needs and earning ability and the defendant's financial obligations to his or her dependents, *United States v. Owens*, 901 F.2d 1457, 1459–60 (8th Cir.1990), "[t]his court and others have held that district courts have the right to order restitution even though the defendant is an indigent at the time the sentence is imposed." *Means v. United States*, 961 F.2d 120, 120 (8th Cir.1992). It is important to note that "constitutional safeguards come into play at the time of enforcement, because a defendant cannot be punished by incarceration (or reincarceration) if his failure to pay restitution occurred through no fault of his own and there are alternatives to incarceration available." *Id.* at 121.

### 2. The Basis of the Offense of Conviction

■ In *Hughey v. United States*, 495 U.S. 411, 413, 110 S.Ct. 1979, 1981, 109 L.Ed.2d 408 (1990), the Supreme Court held that the district court may award restitution

---

5. In determining whether to impose restitution and the amount of restitution under 18 U.S.C. § 3663, the court must consider "the amount of the loss sustained by any victim as a result of the offense, the financial resources of the defendant,

the financial needs and earning ability of the defendant and the defendant's dependents, and such other factors as the court deems appropriate." 18 U.S.C. § 3664(a).

under 18 U.S.C. § 3663 "only for the loss caused by the specific conduct that is the basis of the offense of conviction." Manzer claims that the district court's restitution order runs afoul of *Hughey* by basing the amount of restitution on loss caused by the sale of an estimated 270 modification or cloning packages. Because he was convicted of only two counts of mail fraud, two counts of wire fraud, and one count of copyright infringement, he argues that the amount of loss should have been limited to the loss engendered by those specific transactions alone.

■■■ We disagree. Because a scheme or artifice to defraud is an essential element of the offenses of both mail and wire fraud, a conviction for mail or wire fraud can support a conviction for a broad scheme regardless of whether the defendant is convicted for each fraudulent act within that scheme. *United States v. Welsand,* 23 F.3d 205, 207 (8th Cir.) (citing *United States v. Turino,* 978 F.2d 315 (7th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 2969, 125 L.Ed.2d 668 (1993)), *cert. denied,* —— U.S. ——, 115 S.Ct. 641, 130 L.Ed.2d 546 (1994). As such, we look to the scope of the indictment in order to determine whether it details a broad scheme encompassing transactions "beyond those alleged in the counts of conviction." *Id.* Turning to Manzer's indictment, we have no difficulty concluding that it details a wide-ranging scheme and artifice to defraud sufficient to encompass the sale of at least 270 modification or cloning packages. As a result, we find no error, plain or otherwise.[6]

## 3. Double Recovery

■■■ On November 29, 1989, General Instrument, HBO, and several other premium broadcasters obtained a civil judgment against Manzer for $2 million in compensatory damages in the United States District Court for the Western District of Arkansas.[7] That judgment is based on 79 separate copyright and Communications Act violations stemming from Manzer's sale of 79 modified VCII units to Bottorff. *See* 17 U.S.C. § 504(c); the Communications Act of 1934, § 705, as amended, 47 U.S.C. § 605(a), (d)(3)(B).

Manzer argues that the district court erred in ordering restitution for conduct which is also the basis for a civil judgment. 18 U.S.C. § 3663(e)(1) specifically prohibits the district court from imposing restitution "with respect to a loss for which the victim has received or is to receive compensation...." Manzer also cites *United States v. Gaultier,* 727 F.2d 711 (8th Cir.1984), in support of his argument. In that case, we directed the district court to reduce the defendant's restitution order *pro tanto* to credit amounts recovered by the victim of the defendant's fraud in a separate civil action. *Id.* at 716.

While *Gaultier* makes it clear that even the victims of fraud are not entitled to double recovery for the same loss through both a restitution order and a civil judgment, we do not believe it to be applicable to the instant case. In *Gaultier,* there was no dispute that some of the acts of fraud which formed the basis of the restitution order also served as the basis of the pending civil suit. *Id.* In contrast, the district court in the instant case found that, due to the volume of modification and cloning packages sold by Manzer, it was unclear whether the 79 Copyright Act and Communications Act violations which formed the basis of the civil judgment against Manzer also constituted the basis of the restitution order. Because Manzer has failed to show that enforcement of the restitution order would result in a double recovery, we find *Gaultier* inapplicable at the present time. We note, however, that at the time of any enforcement of the restitution order, Manzer is free to present evidence to preclude recovery by way of restitution in the criminal case for the same conduct already

---

**6.** We are aware that the 1990 amendments to the VWPA potentially undermine Manzer's reliance on *Hughey. See* 18 U.S.C. § 3663(a)(2) (Supp. II 1990). Because the result would be the same under either version of the VWPA, we decline to speculate as to either the applicability or the effect of the 1990 amendments on this appeal. *See Welsand,* 23 F.3d at 207.

**7.** The Honorable Oren Harris, United States District Judge for the Western District of Arkansas, Hot Springs Division.

compensated by way of money damages in any civil case.

### 4. Amount of Loss

Manzer also makes the argument that the district court impermissibly based the amount of restitution on 47 U.S.C. § 605(e)(3)(C)(i)(II)'s fixed damages provision. Because we have already determined the district court's calculation of the amount of loss to be well within the range supported by the record, we need not pursue this argument any further.

### D. Supervised Release

 Manzer challenges his supervised release term on ex post facto grounds. The district court imposed a three-year term of supervised release under the post–1988 amendment version of USSG § 5D3.2(b)(2). Manzer argues that the district court should have sentenced him under the pre–1988 amendment version of USSG § 5D3.2(b)(2) which provides for a maximum two-year term of supervised release for offenses such as mail and wire fraud. Because Manzer failed to object to his supervised release term at the sentencing hearing, we review this claim for plain error. *Wivell,* 893 F.2d at 161.

USSG § 5D3.2(b)(2) was amended effective January 15, 1988, to provide for a maximum three-year term of supervised release for a defendant convicted of a C or D felony. USSG App. C, am. 52. The acts for which Manzer was convicted all occurred after the effective date of the 1988 amendment.[8] Because the district court did not apply USSG § 5D3.2(b)(2) to events occurring before its enactment, we find no ex post facto violation. *Miller v. Florida,* 482 U.S. 423, 430, 107 S.Ct. 2446, 2451, 96 L.Ed.2d 351 (1987).

### E. Ineffective Assistance of Counsel

Finally, Manzer contends that he was denied his Sixth Amendment right to effective assistance of counsel[9] at both the trial and sentencing stages. We decline to address this argument, as we conclude that it is not properly before us. This claim was neither presented to nor addressed by the district court, and, consequently, there has been no opportunity to develop an adequate record upon which we may review it. *United States v. Morris,* 18 F.3d 562, 566 (8th Cir. 1994). If Manzer wishes to pursue this claim, the proper vehicle is a 28 U.S.C. § 2255 (1988) motion for habeas corpus relief. *See United States v. Williams,* 994 F.2d 1287, 1290–91 (8th Cir.1993).

## III. CONCLUSION

For the aforementioned reasons, we affirm Manzer's convictions and sentence.

---

**8.** Counts I and II alleging mail fraud occurred on or about March 1, 1988, and April 1, 1988, respectively. Counts II and IV alleging wire fraud occurred on or about April 18, 1988, and April 27, 1988, respectively. Count VI alleging a copyright violation took place on or about May 5, 1988.

**9.** "In all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defence." U.S. CONST. amend. VI.