**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.

No. 98-4877

OLUSOLA A. ALALADE, a/k/a George
Alalade,
Defendant-Appellant.

Appeal from the United States District Court
for the District of Maryland, at Greenbelt.
Alexander Williams, Jr., District Judge.
(CR-98-275-AW)

Argued: December 3, 1999

Decided: February 25, 2000

Before NIEMEYER and WILLIAMS, Circuit Judges,
and HAMILTON, Senior Circuit Judge.

_____

Affirmed by published opinion. Senior Judge Hamilton wrote the
opinion, in which Judge Niemeyer and Judge Williams joined.

_____

**COUNSEL**

**ARGUED:** Jason D. Tulley, BENNETT & NATHANS, L.L.P., Balti-
more, Maryland, for Appellant. Odessa Palmer Jackson, Assistant
United States Attorney, UNITED STATES ATTORNEY'S OFFICE,
Greenbelt, Maryland, for Appellee. **ON BRIEF:** Lynne A. Battaglia,
United States Attorney, UNITED STATES ATTORNEY'S OFFICE,
Greenbelt, Maryland, for Appellee.

**OPINION**

HAMILTON, Senior Circuit Judge:

The sole issue in this appeal is whether a district court has discretion under the Mandatory Victims Restitution Act of 1996 (the MVRA) § 206(a), 18 U.S.C.A. § 3664 (West Supp. 1999), to order a defendant convicted of credit card fraud, see 18 U.S.C.A. § 1029(a)(2) (West Supp. 1999), to pay restitution in an amount less than the full amount of each victim's loss by allowing an offset for the value of fraudulently obtained property the government seized from the defendant and retained in administrative forfeiture. For reasons that follow, we answer this question in the negative. We, therefore, affirm the judgment in the present case to the extent it orders Olusola Alalade (Alalade), the defendant in this case, to pay $667,858.18 in restitution on a payment schedule of $150.00 per month.

I

On September 9, 1998, Alalade pled guilty in the United States District Court for the District of Maryland, pursuant to a written plea agreement, to one count of credit card fraud in violation of 18 U.S.C. § 1029(a)(2). Alalade's fraudulent scheme, which began in late 1996 and ended in or about March 1998, is best described as occurring in four stages. In the initial stage, Alalade obtained counterfeit drivers' licenses and social security cards in the names of numerous actual persons by using identifying information of those persons he obtained without their knowledge or consent. Using the counterfeit drivers' licenses and social security cards, Alalade next secured post office boxes, office space, and clerical services in the names of at least ten different fictitious business entities at a variety of locations in the Maryland counties of Montgomery and Prince George's. Alalade then obtained more than forty corporate credit card accounts, typically with $20,000 credit limits, from a number of different financial institutions (the Victim Financial Institutions) in the names of his various fictitious business entities. In the final stage of his fraudulent scheme, Alalade used the credit cards chiefly to obtain cash advances on the credit card accounts through automatic teller machines. Alalade also charged some purchases directly to the credit card accounts.

2

Alalade used all of the cash and credit that he fraudulently obtained to support himself personally, including using a portion of the cash to pay his home mortgage and purchase furniture. In total, Alalade fraudulently obtained $667,858.18 from the Victim Financial Institutions.

As part of the plea agreement between Alalade and the government, Alalade agreed not to contest the administrative forfeiture of all items seized from him in connection with the investigation and prosecution of his case.[1] The government ultimately seized and retained $78,982.02 worth of items from Alalade in administrative forfeiture.

The record does not establish that any of the Victim Financial Institutions received any of the forfeited property through the Department of Justice's program for remitting administrative forfeitures to "individuals who have an interest in the forfeited property but who did not participate in, or have knowledge of, the conduct that resulted in the property being subject to forfeiture and, where required, took all reasonable steps under the circumstances to ensure that such property would not be used, acquired, or disposed of contrary to law."[2] 28 C.F.R. § 9.1(a) (1999). Furthermore, the record does not establish that the Victim Financial Institutions received any compensation for their respective losses from any other source either prior to or subsequent to the district court's sentencing of Alalade.

At his sentencing hearing on November 23, 1998, Alalade asked the district court to reduce any amount of restitution it ordered him to pay the Victim Financial Institutions by the value of the items the government seized in administrative forfeiture. The district court refused to grant Alalade the reduction he requested. In this regard, the

_____

[1] An administrative forfeiture is "the process by which property may be forfeited by an investigative agency rather than through judicial proceedings." 28 C.F.R. § 9.2(a) (1999).
[2] Under the Department of Justice's remittance program, forfeited property will only be remitted according to specific guidelines upon the filing of a petition by the party seeking remittance. See 28 C.F.R. §§ 9.3, 9.5 (1999). The record does not establish that any of the Victim Financial Institutions filed petitions for remittance with the Department of Justice in connection with this case.

3

district court reasoned that, under the terms of the MVRA, the government's receipt of the items from Alalade in administrative forfeiture was not germane to the question of the appropriate amount of restitution to be ordered.

At the conclusion of Alalade's sentencing hearing, the district court sentenced Alalade to twenty-four months' imprisonment, followed by a three-year term of supervised release. Additionally, the district court ordered Alalade to pay restitution to the Victim Financial Institutions in the amount of $667,858.18 on a payment schedule of $150.00 per month. The district court subsequently entered a criminal judgment against Alalade reflecting its rulings at sentencing.

Alalade noted this timely appeal. On appeal, Alalade solely challenges the total amount of restitution ordered by the district court. Specifically, he challenges the district court's refusal to reduce the total amount of restitution it ordered him to pay by the value of the items the government seized from him and retained in administrative forfeiture.

II

We begin our consideration of Alalade's challenge to the amount of restitution ordered by the district court by setting forth the statutory provisions implicated by his challenge. Alalade agrees that he is subject to the MVRA, which makes restitution mandatory for particular crimes, including those offenses involving fraud such as the crime to which Alalade pled guilty.[3] See 18 U.S.C.A. § 3663A(a)(1), (c)(1)(A)(ii) (West Supp. 1999). With respect to the amount of mandatory restitution to be ordered, the MVRA provides that "[i]n each order of restitution, the court shall order restitution to each victim <u>in the full amount of each victim's losses as determined by the court</u> and without consideration of the economic circumstances of the defendant." <u>Id.</u> § 3664(f)(1)(A) (emphasis added); <u>see also id.</u> § 3663A(d)

_____

**3** Section 211 of the MVRA provides that the MVRA "shall, to the extent constitutionally permissible, be effective for sentencing proceedings in cases in which the defendant is convicted on or after" April 24, 1996. Pub. L. No. 104-132, Title II § 211; <u>see also</u> 18 U.S.C.A. § 2248 note (West Supp. 1999).

4

(providing that an order of restitution under 18 U.S.C. § 3663A "shall be issued and enforced in accordance with section 3664"). "In no case shall the fact that a victim has received or is entitled to receive compensation with respect to a loss from insurance or any other source be considered in determining the amount of restitution." Id. § 3664(f)(1)(B).

Under the MVRA, after determining the full amount of restitution owed to each victim, the district court is required to set the manner in which, and the schedule according to which, the defendant is to pay the amount of restitution ordered. See id.§ 3664(f)(2). In so doing, the district court is required to consider: (1) the financial resources and other assets of the defendant, including whether any of the assets are jointly controlled; (2) projected earnings and other income of the defendant; and (3) any financial obligations of the defendant, including obligations to dependents. See id.

Despite the MVRA's prohibition on a district court from considering the fact that a victim has received or is entitled to receive compensation with respect to a loss from insurance or any other source in determining the amount of restitution to be ordered initially, see id. § 3664(f)(1)(B), the MVRA provides that "[a]ny amount paid to a victim under an order of restitution shall be reduced by any amount later recovered as compensatory damages for the same loss by the victim in--(A) any Federal civil proceeding; and (B) any State civil proceeding, to the extent provided by the law of the State," id. § 3664(j)(2).

Under the law in existence prior to the effective date of the MVRA, the payment of restitution in this case would have been a discretionary decision in the hands of the district court under the Victim and Witness Protection Act of 1982 (VWPA) § 5(a), 18 U.S.C.A. § 3663(a) (West 1985) (amended 1996). Furthermore, in determining whether to order restitution under the VWPA and the amount of such restitution, the district court had to "consider the amount of loss sustained by any victim as a result of the offense, the financial resources of the defendant, the financial needs and earning ability of the defendant and the defendant's dependants, and such other factors as the court deem[ed] appropriate." Id.§ 3664(a).

5

Alalade concedes that the full amount of loss to the Victim Financial Institutions is $667,858.18. Nevertheless, he contends the district court erred in ordering him to pay restitution in this amount. According to Alalade, the district court mistakenly believed that it lacked discretion under the MVRA to grant the reduction in restitution he requested. Whether the district court possessed discretion under the MVRA to order restitution in an amount less than the full amount of each Victim Financial Institution's loss by allowing an offset for the value of the property seized from Alalade and retained by the government in administrative forfeiture is purely a legal question and, therefore, subject to de novo review. See United States v. Hall, 972 F.2d 67, 69 (4th Cir. 1992) (noting that interpretation of a statute is a purely legal question calling for de novo review).

In support of his position, Alalade relies upon pre-MVRA case law holding that the district court has discretion to reduce the amount of restitution by amounts seized from the defendant in forfeiture proceedings. See United States v. Kahn, 53 F.3d 507, 519 (2d Cir. 1995) (noting on remand for resentencing in a pre-MVRA case, that the district court may reduce the amount of restitution to be ordered by the amount of forfeiture); United States v. Barnette , 902 F. Supp. 1522, 1531 (M.D. Fla. 1995) (reducing amount of restitution to be ordered by amount of forfeiture in a pre-MVRA case). Alalade contends this pre-MVRA case law survived passage of the MVRA on the ground that the MVRA does not specifically address whether the district court is precluded from reducing the amount of restitution to be ordered by forfeited amounts.

The government responds that the plain language of the MVRA, specifically 18 U.S.C. § 3664(f)(1)(A), makes clear that a district court is required to order a defendant to make restitution to the victim of a covered offense in the full amount of each victim's loss. Therefore, the government concludes, the plain language of the MVRA left no room for the district court, in determining the amount of restitution to be ordered, to reduce the full amount of loss to the Victim Financial Institutions by the value of the items the government seized from Alalade and retained in administrative forfeiture. Accordingly, the government argues, the district court's order of restitution should be affirmed.

6

We fully agree with the government that the plain language of the MVRA did not grant the district court discretion to reduce the amount of restitution required to be ordered by an amount equal to the value of the property seized from Alalade and retained by the government in administrative forfeiture. Critically, with passage of the MVRA, Congress completely deleted the language of the VWPA affording the district court discretion in cases such as this to consider any factor it deemed appropriate in determining the amount of restitution to be ordered, see 18 U.S.C.A. § 3664(a) (West 1985) (amended 1996), and replaced it with language requiring the district court to order restitution in the full amount of loss to each victim as determined by the district court, see 18 U.S.C.A. § 3664(f)(1)(A) (West Supp. 1999). Furthermore, in contrast to the VWPA, the MVRA does not contain any language requiring the district court, in determining the total amount of restitution to be ordered, to consider the financial resources of the defendant or the financial needs and earning ability of the defendant and the defendant's dependants. Compare 18 U.S.C.A. § 3664(f) (West Supp. 1999) with 18 U.S.C.A. § 3664(a) (West 1985) (amended 1996). Moreover, the MVRA's prohibition on district courts from considering the fact that a victim has received or is entitled to receive compensation for its loss from an insurance company or any other source in determining the total amount of restitution to be ordered, see 18 U.S.C.A. § 3664(f)(1)(B) (West 1999), further evinces congressional intent that defendants such as Alalade initially be ordered to pay restitution in the full amount of each victim's loss. If the MVRA prohibits district courts from reducing the amount of restitution by the amount of third-party compensation received by a victim prior to entry of the district court's order of restitution, it would be nonsensical for the district court to have discretion to reduce the amount of restitution by the value of property seized from the defendant and retained by the government in administrative forfeiture, a loss to the defendant.**4**

_____

**4** The MVRA's requirement that any amount paid to a victim under an order of restitution be reduced by any amount later recovered by the victim as compensatory damages for the same loss in any federal or state civil proceeding, see 18 U.S.C.A. § 3664(j)(2) (West Supp. 1999), does not undercut the thrust of our point. This is because § 3664(j)(2), by its terms, only comes into play after the district court has already ordered restitution in the full amount of the victim's loss. See United States v.

7

Because literal application of the MVRA's requirement that the district court "order restitution to each victim in the full amount of each victim's losses as determined by the district court . . .," id. § 3664(f)(1)(A), does not produce a result demonstrably at odds with the intent of Congress, we hold the district court lacked discretion under the MVRA to order restitution in this case in an amount less than the full amount of each Victim Financial Institution's loss by allowing an offset for the value of the fraudulently obtained property the government seized from Alalade and retained in administrative forfeiture.[5] See United States v. Ron Pair Enter., Inc., 489 U.S. 235, 242 (1989) ("The plain meaning of legislation should be conclusive, except in the rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters." (internal quotation marks omitted) (alteration in original)). Accordingly, we affirm the criminal judgment against Alalade to the extent it orders him to pay restitution in the amount of $667,858.18 on a payment schedule of $150.00 per month.

AFFIRMED

_____

Crawford, 169 F.3d 590, 593 (9th Cir. 1999) (explaining that "[w]hile insurance settlements are excluded in the initial computation of the amount of restitution owed" under § 3664(f)(1)(B), "once that total amount is determined, the defendant is entitled[under § 3664(j)(2)], to have the amount of restitution reduced by any amount later recovered by the victim as compensatory damages for the same loss").

[5] Under the facts of this case, we need not decide, and we express no opinion on, the effect upon the district court's calculation of the full amount of a victim's loss under the MVRA when the victim receives property or cash from the Department of Justice through its remittance program involving property or cash seized by the government in administrative forfeiture in connection with the case.