# United States Court of Appeals
## For the First Circuit

————————————

No. 99-2204

UNITED STATES of AMERICA,

Appellee,

v.

ROLANDO SOLARES,
a/k/a Miguel Gamez,
a/k/a Joes Armento Vasquez,

Defendant, Appellant.

————————————

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF RHODE ISLAND

[Hon. Mary M. Lisi, U.S. District Judge]

————————————

Before

Boudin, Lynch, and Lipez,
Circuit Judges.

————————————

Barry S. Pollack, with whom Dechert Price & Rhoads was on brief, for defendant-appellant.

Donald C. Lockhart, Assistant U.S. Attorney, with whom Margaret E. Curran, U.S. Attorney, and Terrence P. Donnelly, Assistant U.S. Attorney, were on brief, for appellee.

————————————

December 29, 2000

_____

**LYNCH, _Circuit Judge_**.  Ten members of a conspiracy defrauded two banks through a counterfeit check cashing scheme. Defendant Rolando Solares was among them, and appeals from three aspects of his sentence following his guilty plea.

Solares and the others obtained counterfeit payroll checks that appeared to be issued by A & H Manufacturing, a business based in Rhode Island.  The conspirators also obtained counterfeit identification cards in the names of the payees listed on the counterfeit checks.  Acting alone and in groups of two or three, the conspirators then quickly cashed 224 of these counterfeit checks at fifteen different Rhode Island branches of Citizens Bank by using the false identification.  This scheme took place over three days, from Friday, February 26, 1999, through Sunday, February 28, 1999.  This took advantage of the fact that the company, A & H, was closed for the weekend and so Citizens Bank was unable to contact the business to verify the authenticity of any of the checks.  The total loss to Citizens was $87,586.80.

In a second round, an identical scheme was employed to defraud Fleet Bank, except this time a new company was used, the

Cavicchio Greenhouses.  The total loss to Fleet was documented to be $20,069.85.

Solares pled guilty to bank fraud and conspiracy.  <u>See</u> 18 U.S.C. § 1344 (bank fraud); 18 U.S.C. § 371 (conspiracy to commit bank fraud).  There were nine co-defendants.  On appeal, Solares argues three objections to his sentence.  He says that the district court erred (1) in making a four level upward adjustment on the basis that Solares was a leader and organizer, and in not considering instead a two level adjustment on a finding that he played only a managerial or supervisory role; (2) in ordering restitution of $107,656.65 for all losses from the conspiracy; and (3) in ordering that the defendant remain outside the United States if he was deported by the INS.  We take each argument in turn.

**Upward Adjustments**

The Pre-Sentence Report recommended that Solares receive a four level upward adjustment for leadership and as an organizer under U.S.S.G. § 3B1.1(a).  The PSR recommendation was based on the fact that Solares recruited co-defendant Luis Avelar and organized the out-of-state defendants as part of the second phase of the conspiracy.  Solares's counsel filed no

-4-

objection to the PSR and at sentencing said that he was in agreement with the factual report as well as the Sentencing Guidelines computations in the PSR.

The government says that by such agreement, the defendant forfeited or waived his right to challenge the upward adjustment. We choose not to explore again the differences between forfeiture and waiver but will instead assume arguendo that Solares should have the benefit of plain error review. See United States v. Olano, 507 U.S. 725, 732 (1993).

The defendant's main argument is that the court did not make sufficient findings to support its conclusions. The court's findings were that Solares recruited other members of the conspiracy and that he took a greater share in the proceeds of the criminal activity. The defendant denies that there is evidence he took a greater share of the proceeds and says that the evidence showed only that he recruited defendant Avelar. From the record and the PSR, it is clear that Solares was the only Providence-based defendant, apart from defendant Avelar. Solares recruited defendant Avelar in the second phase. It is reasonable to infer that Solares was the one familiar with the Providence area and with the local bank branches, that he was in

charge of the operations, and that he instructed the out-of-state defendants about the logistics of the second phase of the operation. Telephone records show that seven phone calls were placed by out-of-state defendants to his residence just before the second phase began. It is reasonable to infer that Solares recruited the others, just as he had recruited Avelar. Thus, many of the seven factors we have identified to show whether a defendant qualifies as an organizer or leader were met. See United States v. Robbio, 186 F.3d 37, 45 (1st Cir. 1999) (listing factors), cert. denied, 120 S. Ct. 602 (2000). The record thus supports the district court's determination, and there is no error.

Where the defendant did not challenge the PSR, we will not entertain the defendant's final argument that the court failed to state adequately in open court the reasons for its imposition of the particular sentence. The court was on no notice that there was any issue as to the court's statement of reasons, and the defendant, who created that situation, cannot gain advantage from it.

**Amount of the Restitution Award**

Solares objects to the restitution order, which requires him to pay back the entire loss to the two banks. Under the Victim and Witness Protection Act, 18 U.S.C. §§ 3663(a), 3664(a), restitution awards are limited to "the loss caused by the specific conduct that is the basis of the offense of conviction." Hughey v. United States, 495 U.S. 411, 413 (1990). Under the VWPA, "in the case of an offense that involves as an element a scheme, conspiracy, or pattern of criminal activity," a victim is defined as "any person directly harmed by the defendant's criminal conduct in the course of the scheme, conspiracy, or pattern" 18 U.S.C. § 3663(a)(2). We have held that a defendant in a conspiracy is liable for all reasonably foreseeable losses caused to the victims by the conspiracy. See United States v. Collins, 209 F.3d 1, 4 (1st Cir. 1999).

Once again, as to this issue, Solares filed no objection to the PSR, and indeed said that he affirmatively agreed with the facts and Sentencing Guidelines calculations in the PSR. Again, we give him the benefit of plain error review. For the reasons stated above, it was quite reasonable for the district court to conclude that this was a well organized

conspiracy, and that Solares himself organized and was deeply involved in it.  Thus, he could have reasonably foreseen the losses at issue.  There was no error.

**Condition of Supervised Release**

Solares argues that the district court erred at sentencing when it ordered, as a condition of supervised release, that <u>if</u> Solares were deported, he was to remain outside the U.S. for the entire term of his supervised release.  Again he failed to object to this condition, and review is at most for plain error.

Solares concedes a key distinction here.  While we have held that a district court may not order a defendant to be deported as a condition of supervised release, <u>United States</u> v. <u>Sanchez</u>, 923 F.2d 236, 237 (1st Cir. 1991), the court may, <u>if</u> the defendant is deported, provide, in the words of the statute, "as a condition of supervised release, that he be deported and remain outside the United States,"  18 U.S.C. § 3583(d).

Solares argues first that under <u>Sanchez</u>, this court's interpretation of § 3583(d) indicates that it is not to disturb the power of the Executive Branch.  That is an overreading of <u>Sanchez</u>, which does not prohibit the order at issue here.  His

-8-

next argument is that to the extent that the statute authorizes the type of order issued here, the statute violates the separation of powers doctrine. We do not see why, and the point is not argued, and so is waived. Solares also makes a vague due process claim which again we reject as not having been argued and as facially appearing to have no merit. To the extent Solares is raising a hypothetical future concern about the effect of the court order if the INS were willing to readmit him to the country, that issue can be faced later. If the district court order stood as an obstacle at that time, a point on which we express no opinion, Solares would be free then to ask for a modification.

For these reasons, the sentence is affirmed in all pertinent respects.