**Not for Publication in West's Federal Reporter**
**Citation Limited Pursuant to 1st Cir. Loc. R. 32.3**

# United States Court of Appeals
## For the First Circuit

No. 02-1062

UNITED STATES OF AMERICA,

Appellee,

v.

TODD COREY,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MAINE

[Hon. Gene Carter, U.S. District Judge]

Before

Torruella, Circuit Judge,

Greenberg,* Senior Circuit Judge,

and Howard Circuit Judge.

J. Hilary Billings, with whom Billings & Silverstein was on brief, for appellant.
F. Mark Terison, Senior Litigation Counsel, with whom Paula D. Silsby, United States Attorney, was on brief, for appellee.

October 7, 2003

---

* Of the Third Circuit, sitting by designation.

**HOWARD**, **Circuit Judge**.  This appeal concerns the scope of restitution that may be awarded under the Mandatory Victim Witness Restitution Act, 18 U.S.C. § 3663A ("MVRA").  Defendant William E. Corey ("Corey") appeals the district court's order directing him to pay more than $42,000 in restitution to Farm Credit of Maine ("Farm Credit"), a lending institution he stands guilty of defrauding.  We affirm.

## I.

The case arises from a fraudulent loan application.  On July 26, 1997, Corey submitted an application to Farm Credit for a credit line loan supported by documents containing material misrepresentations about his credit status, including, inter alia, a sham social security number, falsified letters of credit, and federal income tax returns with substantial inaccuracies.  On September 5, 1997, Farm Credit granted Corey a line of credit in the amount of $54,997.  Corey borrowed the full amount authorized under the loan.

From the outset, Corey failed to make loan repayments to Farm Credit.  In August 1998, Farm Credit foreclosed on the loan and obtained $22,500 in gross proceeds from the auction of real property that collateralized the credit line.  Eventually, on October 6, 1998, Farm Credit moved the account into non-accrual status.

In due course, the government charged Corey with bank fraud, <u>see</u> 18 U.S.C. § 1344, in a one-count information.[1] On July 18, 2001, Corey pleaded guilty to the information. Prior to sentencing, the probation department filed with the district court a presentence report proposing a restitution award of $44,152.43. The proposed award had four components: (1) a net loss on the loan of $28,925; (2) legal expenses of $8,910.01; (3) prejudgment interest in the amount of $4,292.42; and (4) real estate sale costs of $2,025. The government concurred in the probation department's proposal, but Corey objected to it to the extent that it proposed compensating Farm Credit for losses other than its net loss on the loan. In Corey's view, the other damages were "consequential" and thus beyond the reach of the MVRA.

In pressing his objection, Corey relied on several decisions from other circuits holding that the MVRA bars collateral consequential damages in a restitution award. At issue in those

---

[1] 18 U.S.C. § 1344 provides:

> Whoever knowingly executes, or attempts to execute, a scheme or artifice--
>
> (1)  to defraud a financial institution; or
> (2)  to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises; shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both.

cases was the scope of 18 U.S.C. § 3663A(b)(1), which pertains to offenses "resulting in damage to or loss or destruction of property . . ." In pertinent part, the statute states that a restitution award should be the greater of "(I) the value of the property on the date of the damage, loss, or destruction; or (II) the value of the property on the date of sentencing, less [ ] the value (as of the date the property is returned) of any part of the property that is returned." As Corey correctly observed, courts have read this language as limiting restitution awards to "direct" losses and precluding the inclusion of "consequential" damages. See e.g., United States v. Seward, 272 F.3d 831, 839 (7th Cir. 2001); United States v. Mikolajczyk, 137 F.3d 237, 245-46 (5th Cir. 1998).

The government responded that the losses in question were directly related to the loan and, as such, recoverable. To establish this link, the government presented the testimony of a bank official familiar with the Corey transaction. A Farm Credit senior vice president testified about the nature of Farm Credit's losses. He stated that the bank suffered (1) foreclosure expenses; (2) $2,000 in expenses for a "disclosure hearing" to gather information about Corey's financial position; and (3) legal expenses associated with Corey's bankruptcy, including a petition to release the collateral Corey used to secure the loan from the bankruptcy estate. He also testified that the bank's costs from its sale of the secured collateral included auctioneer's fees and

-4-

publication expenses.  Finally, he stated that with respect to lost interest, Farm Credit determined (on August 6, 1998) that the Corey loan was non-earning and, two months later the bank transferred the loan to non-accrual status.  The district court rejected Corey's argument that the MVRA permitted it only to award restitution for the loan  principal.  The court found the cases Corey cited to be inapposite because Corey had not caused a loss or destruction of property within the meaning of § 3663A(b)(1).  The court then looked to the statutory definition of "victim" -- "person directly and proximately harmed as a result of the commission of an offense," 18 U.S.C. § 3663A(2) -- and concluded that a compensable loss includes all losses "proximately caused" by the subject criminal conduct.  Applying this rationale and relying on the testimony summarized in the preceding paragraph, the court concluded that Farm Credit's legal expenses and prejudgment interest were within the zone of foreseeability and thus recoverable under the statute.  But the court was not persuaded that Farm Credit's sales costs were proximately caused by Corey's offense and thus declined to award $2,025 in auctioneer's fees.  In the end, the court imposed a $42,127.43 restitution obligation. This appeal followed.

## II.

Although he presses it from a number of angles, Corey bases this appeal on an argument that the district court exceeded

-5-

its statutory authority when it compensated Farm Credit for its attorneys' fees and for the prejudgment interest it lost on Corey's account. Corey's thesis is straightforward: attorney's fees and interest are not proper bases for a restitution award because they constitute consequential damages -- i.e., "such damage, loss, or injury as does not flow directly and immediately from the act of the party, but only from some of the consequences or results of such act." Black's Law Dictionary 390 96th ed. 1990). As he did below, he points to precedent from other circuits holding that attorney's fees and interest constitute impermissible consequential damages. See, e.g., Seward, 272 F.3d at 839.

While we have no quarrel with the abstract proposition that unforeseeable consequential damages are beyond the scope of the MVRA, Corey's one-size-fits-all categorical approach is not well suited to carrying out the statute's purposes. In the end, the question is really whether the damages for which the district court awarded restitution were "reasonably foreseeable" to Corey. See United States v. Collins, 209 F.3d 1, 3-4 (1st Cir. 1999). And in our view, the court permissibly concluded that they were.

As the district court concluded, Corey's restitution order fell within the compass of § 3663A, which requires a defendant to "make restitution to the victim of the offense." 18 U.S.C. § 3663A. Under the statutory framework, sentencing courts wield considerable discretion "to reach an expeditious, reasonable

-6-

determination of appropriate restitution by resolving uncertainties with a view toward achieving fairness to the victim."  S. Rep. No. 97-532, reprinted in 1982 U.S.C.C.A.N. 2515, 2537; United States v. Benjamin, 30 F.3d 196, 198 (1st Cir. 1994).  This broad discretion enables courts to resolve the complicated issues that may arise during loss determinations.  United States v. Minneman, 143 F.3d 274, 284 (7th Cir. 1998).

As we have previously observed, Congress did not contemplate a purely formalistic approach when it widened the scope of restitutionary remedies by enacting the MVRA.  See United States v. Vaknin, 112 F.3d 579, 588 (1st Cir. 1997) (interpreting the VWPA).  Rather, the focus of the district court's inquiry should be on the relationship between the victim's loss and the defendant's crime.  Under the VWPA, we have adopted a "but for" standard of causation for restitution that requires the government to show not only that a particular loss would not have occurred but for the conduct underlying the offense of conviction, but also that the causal nexus between the conduct and the loss is not too attenuated (either factually or temporally).  The watchword is reasonableness.  "A sentencing court should undertake an individualized inquiry; *what constitutes sufficient causation can only be determined case by case, in a fact-specific probe*."  Id. (emphasis added).[2]

---

[2]  In United States v. Cutter, 313 F.3d 1, 7 (1st Cir. 2002), we held that because the VWPA and the MVRA contain the identical causation provision, the statutes should be interpreted in tandem.

-7-

Fraud is distinct from other traditional offenses against physical property. Fraud constitutes "[a]n intentional perversion of the truth." Black's Law Dictionary 660 (6th Ed. 1990). The subject criminal conduct is thus the misrepresentation itself rather than the theft of some tangible good. Where there is fraud, then, the concept of loss comprehends all reasonably foreseeable injuries "sustained by [the] victim as a result of the underlying offense." 18 U.S.C. § 3664; see, also, e.g., United States v. Solares, 236 F.3d 24, 26 (1st Cir. 2000)(holding the defendant responsible for the totality of banks' losses from conspiracy to cash counterfeit checks because such losses were reasonably foreseeable). Thus, the task before us is to determine whether the losses for which the court ordered restitution can be so categorized.

We begin with the question of attorney's fees. As Corey argued, in the context of § 3663A(b)(1) and its predecessor, § 3663(b)(1)[3], the clear weight of authority has held that restitution does not encompass attorney's fees.[4] But these cases

---

[3] See note 2, above; see also United States v. Simmonds, 235 F.3d 826, 832 n.2 (3d Cir. 2000) (comparing § 3663(b)(1) and § 3663A(b)(1)). Although Congress broadened the scope of restitution when it enacted § 3663A, it did not change the requirement that the victim's damages be limited to its actual loss.

[4] Seward, 272 F.3d. at 839 (holding that restitution does not comprehend attorney's and executor's fees "incurred in fighting a fraudulent scheme" in probate court because they are consequential

-8-

do not address situations, as here, where the attorney's fees were part of the intrinsic worth of the subject property.

As the district court observed, the statute contains no language limiting a court's authority to determine the appropriate amount of loss where the underlying crime does not involve damage to property. In analogous cases, several circuits have not confined restitution under the MVRA to the strict replacement value of the property.[5] Implicit in these decisions is that the concept

rather than direct damages); <u>United States</u> v. <u>Simmonds</u>, 235 F.3d 826, 834 (3d Cir. 2000) (determining that the VWPA unambiguously limited restitution to "'the value of property' lost, damaged or destroyed as a result of the [defendant's] crimes."); <u>Mikolajczyk</u>, 137 F.3d at 245-46 (including the victim's attorney's fees in restitution where they were a direct result of the defendant's fraud rather than a voluntary act taken by the victim to recover property or damages); <u>Government of Virgin Islands</u> v. <u>Davis</u>, 43 F.3d 41, 45-46 (3rd Cir. 1994), <u>cert.</u> <u>denied</u>, 515 U.S. 1123 (1995) (concluding that an award of restitution pursuant to VWPA cannot include litigation costs to recover balance of funds in bank accounts because such expense are too far removed from the underlying criminal conduct); <u>United States</u> v. <u>Mullins</u>, 971 F.2d 1138, 1147-48 (4th Cir. 1992) (declining, under the VWPA, to award attorney's and investigator's fees expended to recover equipment obtained through a false credit application); <u>United States</u> v. <u>Barany</u>, 884 F.2d 1255 (9th Cir. 1989), <u>cert.</u> <u>denied</u>, 493 U.S. 1034 (1990) (holding that insurance company's legal expenses from a "wholly separate" civil suit were not recoverable under the VWPA).

[5] <u>Cummings</u>, 281 F.3d at 1053 (9th Cir. 2002) (upholding restitution award that included the victim's attorney's fees and expenses for separate state and international civil proceedings because they were not "wholly separate" from the government's prosecution of the defendant); <u>United States</u> v. <u>Akbani</u>, 151 F.3d 774, 779-780 (8th Cir. 1998)(holding that attorney's fees are permissible where the underlying offense does not involve loss or destruction to physical property); <u>United States</u> v. <u>Blackburn</u>, 9 F.3d 353, 359 (5th Cir. 1993) (holding that attorney's fees incurred in defending civil suit were recoverable because they directly resulted from the underlying offense); <u>see</u> <u>also</u> <u>United</u>

of "replacement value" is different where physical property is not involved, and an attendant acknowledgment that attorney's fees in those limited cases may be within the compass of foreseeable losses. Corey's argument presumes a per se rule that all legal expenses are impermissible under the MVRA. We see no statutory basis for such a rule. Frequently, attorney's fees will not be recoverable. But the determination whether a loss is recoverable entails a fact-intensive inquiry that is best conceptualized in terms of foreseeability.

Here, there was evidence that led the court to conclude that Farm Credit's legal expenses arose directly from Corey's fraud. Corey's misrepresentations divested Farm Credit of its ability to bargain with the real facts when it granted him a line of credit. The loan was premised upon a sham and, as a matter of course, Farm Credit's response to that fraud entailed routine legal expenses that are necessarily incurred when a heavily regulated secured lender mitigates its losses by foreclosing on collateral. The fees at issue here are thus entirely different in kind from those incurred where a crime victim initiates a civil lawsuit on the basis of the underlying offense. Barany, 884 F.2d at 1261.

The same reasoning defeats Corey's argument that the district court erred by including prejudgment interest in its

---

States v. Patty, 992 F.2d 1045, 1049 (10th Cir. 1993) (concluding that attorney's fees may be recoverable under the VWPA if they are directly related to the defendant's criminal conduct).

-10-

restitution award.  Because the MVRA is silent on the issue of prejudgment interest, we turn to "an appraisal of the congressional purpose."  Rodgers v. United States, 332 U.S. 371, 373 (1947).  The MVRA aims to provide victims with full and fair compensation, rendering the return of the principal loan amount inadequate because "[f]oregone interest is one aspect of the victim's actual loss." United States v. Smith, 944 F.2d 618, 626 (9th Cir. 1991) (interpreting the VWPA).  Indeed, a majority of the circuits addressing the issue have held that restitution under the MVRA, or alternatively the VWPA, may include prejudgment interest. Id. (construing VWPA); Shepard, 269 F.3d at 886 (construing MVRA); Davis, 43 F.3d 47 (construing VWPA); United States v. Hoyle, 33 F.3d 415 (5th Cir. 1994)(construing VWPA); Patty, 992 F.2d at 1050 (construing VWPA); United States v. Rochester, 898 F.2d 971, 983 (5th Cir. 1990) (construing VWPA).

In our view, placing prejudgment interest within the category of potentially recoverable losses in a restitution award is consistent with the MVRA.  As with attorney's fees, there are no predetermined wooden rules that govern whether prejudgment interest on a loan falls within the ambit of a restitution award.  Rather, it is within the sound discretion of the district court to make that determination.

Interest is the bread and butter of the business of any lending institution.  "Lost interest translates into lost

-11-

opportunities, as it reflects the victim's inability to use his or her money for productive purposes."  Davis, 43 F.3d at 47.  When Farm Credit, relying upon Corey's falsified application, loaned money to Corey, it presumably made a considered judgment about the optimal allocation of its resources, thereby passing up other revenue-generating enterprises.  Accordingly there was sufficient evidence for the district court to find that Farm Credit's lost interest was directly related to Corey's fraud.

### III.

Based upon the foregoing, we **affirm** the district court's award of restitution.