### UNITED STATES of America

v.

### Ricardo Wendell SMITH and Celestine Smith, Defendants.

### No. CRIM.A.01–0263–01RMU, CRIM.A.01–0263–02RMU.

United States District Court, District of Columbia.

Oct. 28, 2003.

Joel William Anders, Washington, DC, for Defendants.

Henry Kapp Kopel, U.S. Attorney's Office, Washington, DC, for Plaintiff.

## MEMORANDUM ORDER

### GRANTING THE DEFENDANTS' MOTION TO APPLY FORFEITURE TO RESTITUTION

URBINA, District Judge.

### I. INTRODUCTION AND BACKGROUND

This criminal action comes before the court on the defendants' motion requesting that the court offset the victim's restitution award against the total amount that the government remitted to the victim. Defs.' Mot. at 1. The court exercises its discretion to grant the defendants' motion.

Between October 1, 1999 and August 31, 2000, the defendants conspired to submit fraudulent invoices to the victim, Care-First BlueCross BlueShield ("CareFirst"),[1] during defendant Celestine Smith's employment with CareFirst's human resources division. Def. C. Smith's PSR at 4–6; Def. R, Smith's PSR at 4–6. Specifically, by virtue of defendant Celestine Smith's employment with CareFirst, the defendants developed a scheme to obtain information that identified applicants for employment vacancies with CareFirst. With this information in hand, the defendants fabricated fraudulent claims for employee-recruitment commissions based on the false premise that the defendants had recruited the applicants and caused Care-First to hire them. *Id.* In so doing, the defendants induced CareFirst to issue checks to "Alternative Personnel Solutions," an entity in whose name defendant Ricardo Smith had created a business checking account. *Id.* In short, the defendants created and submitted false claims to CareFirst for employee-recruitment

---

1. CareFirst is an independent, non-profit holding company with affiliates that provide health care and related services to its members in the Mid–Atlantic region. CareFirst BlueCross BlueShield, *Company Overview*, http://www.carefirst.com/company/html/AboutUsHome.html (last visited Oct. 28, 2003).

commissions knowing that neither they nor "Alternative Personnel Solutions" recruited any of the identified job applicants. *Id.*

On October 1, 2001, the defendants pled guilty to conspiracy to commit mail fraud under 18 U.S.C. § 371. Def. C. Smith's PSR at 4; Def. R. Smith's PSR at 4. In staggered sentencings, the court sentenced and ordered the defendants to jointly and severally pay $138,571.00 in restitution to their victim, CareFirst. J. of Def. C. Smith at 1–2, 5; J. of Def. R. Smith at 1–2, 5.

The parties now jointly represent that the Federal Bureau of Investigation ("FBI") seized funds in the defendants' names totaling $86,830.80 [2] for administrative forfeiture.[3] Defs.' Mot. at 1; Gov't's Resp. Exs. 1–4. According to the defendants, the administratively-forfeited amount involves part of the same funds that are the subject of this criminal prosecution. Defs.' Mem. in Supp. of Defs.' Mot. ("Defs.' Mem.") at 1. Further, the parties jointly represent that the government has remitted these forfeited funds to CareFirst as of March 19, 2001. *Id.* at 2; Gov't's Resp. at 2.

On November 13, 2002, the defendants filed a motion requesting that the court apply the $86,830.80 in forfeited funds seized by the government to the $138,571.00 amount owed in restitution. Defs.' Mot. at 1. In response, the government indicates that it does not oppose the defendants' motion, but rather directs the court's attention to case law that may limit the court's ability to grant the defendants' request. Gov't's Resp. at 2.

## II. DISCUSSION

■ The narrow issue before the court is whether the court has the discretion to offset the amount of restitution that the defendants owe the victim with the administratively-forfeited funds that the government remitted to the victim. The court concludes that it does have such discretion and, in exercising that discretion, offsets the total amount of restitution by the forfeited amount that the government remitted to CareFirst.

The court begins its analysis of the defendants' motion by setting forth the applicable statutory provisions. In their briefs, both parties direct the court's attention to the Mandatory Victims Restitution Act ("MVRA"), as amended 18 U.S.C. § 3663A. *Id.*; Defs.' Mot. at 2. As its name suggests, the MVRA requires the sentencing court to order restitution to the victims of defendants who are convicted of certain enumerated crimes. 18 U.S.C. § 3663A(a)(1). In particular, the MVRA makes restitution a mandatory part of the sentence for a defendant convicted of an offense against property under Title 18.[4] *Id.* §§ 3663A(a)(1), (c)(1)(A)(ii), 3664(f)(1)(A).

Restitution awards under the MVRA are implemented and enforced according to the provisions of 18 U.S.C. § 3664. *Id.* § 3663A(d) (providing that an order of restitution under 18 U.S.C. § 3663A "shall be

---

**2.** Specifically, the FBI seized the following monies: (1) $9,457.69 from Morgan Stanley Dean Witter account number 642–149743–008; (2) $59,899.73 from All First Bank account number 09701–3185–3; (3) $3,842.90 from Datek Online Brokerage Services account number 639–7068–87; and (4) $13,630.48 from NIH Federal Credit Union account number 612057. Defs.' Mot. at 1.

**3.** An administrative forfeiture is "the process by which property may be forfeited by an investigative agency rather than through judicial proceedings." 28 C.F.R. § 9.2(a).

**4.** In the case *sub judice,* the defendants do not dispute that their respective mail fraud convictions under 18 U.S.C. § 371 fall within the purview of the MVRA.

issued and enforced in accordance with section 3664"). Section 3664 provides that "the court shall order restitution to each victim in the full amount of each victim's losses as determined by the court[.]"[5] *Id.* § 3664(f)(1)(A).

■ The purpose of the MVRA is, "to the extent possible, to make victims whole, to fully compensate victims for their losses, and to restore victims to their original state of well-being." *United States v. Simmonds,* 235 F.3d 826, 831 (3d Cir. 2000). Accordingly, the MVRA instructs the district court to assess the victim's restitution based on the amount of actual loss that the defendant has caused to the victim. *United States v. Corey,* 77 Fed. Appx. 7, at 11 (1st Cir.2003) (stating that "although Congress broadened the scope of restitution when it enacted § 3663A, it did not change the requirement that the victim's damages be limited to its actual loss"); *United States v. Quillen,* 335 F.3d 219, 222 (3d Cir.2003) (stating that courts must limit restitution to "an amount pegged to the actual losses suffered by the victims of the defendant's criminal conduct"); *United States v. Coriaty,* 300 F.3d 244, 252 (2d Cir.2002) (explaining that a victim's actual loss limits a court's power to order restitution under the MVRA); *United States v. Seward,* 272 F.3d 831, 839 (7th Cir.2001). Therefore, restitution does not permit recovery above a victim's actual loss. *See Quillen,* 335 F.3d at 226 (explaining that the district court may order restitution under the MVRA "provided that the defendant is not required to compensate the victim twice for the same

loss"); *United States v. Fore,* 169 F.3d 104, 110 (2d Cir.1999) (reversing a restitution order granting double recovery); *United States v. Parsons,* 141 F.3d 386, 393 (1st Cir.1998); *United States v. Menza,* 137 F.3d 533, 539 (7th Cir.1998); *United States v. West Indies Transp., Inc.,* 127 F.3d 299, 315 (3d Cir.1997) (directing that any restitution found to exceed the amount of actual damages be returned to the defendant); *United States v. Manzer,* 69 F.3d 222, 230 (8th Cir.1995) (noting that restitution is inappropriate "when it would represent double recovery by the victim").

■ In the instant case, the court ordered restitution in the amount of Care-First's actual loss, $138,571.00.[6] J. of C. Smith at 1–2, 5; J. of R. Smith at 12, 5. Prior to the court's restitution order, however, CareFirst received $86,830.80 through the government's remittance program for part of the same loss contemplated by the restitution award. Defs.' Mot. at 1; Gov't's Resp. at 2. The defendants are, therefore, entitled to offset their total restitution payment by $86.830.80, the forfeited amount that the government remitted to CareFirst. *See Corey,* 77 Fed.Appx. at 11; *Quillen,* 335 F.3d at 222; *Coriaty,* 300 F.3d at 252; *Seward,* 272 F.3d at 839; *Fore,* 169 F.3d at 110; *Parsons,* 141 F.3d at 393; *Menza,* 137 F.3d at 539; *West Indies Transp., Inc.,* 127 F.3d at 315; *Manzer,* 69 F.3d at 230. If the court were to forbid the requested offset, it would essentially be ordering the defendants to pay CareFirst an amount above and beyond their monetary loss, an outcome that

5. In determining the amount of restitution that a defendant owes to a victim, the court shall not consider either "the economic circumstances of the defendant," or "the fact that a victim has received or is entitled to receive compensation with respect to a loss from insurance or any other source." 18 U.S.C. § 3664(f)(1)(A)-(B).

6. The court's calculation of restitution based on the victim's actual loss is not at odds with the D.C. Circuit's recent decision in *United States v. Bolla,* 346 F.3d 1148 (D.C.Cir.2003), which determined, *inter alia,* that the lower court's restitution order computed on the basis of intended loss did not amount to plain error. *Id.* at 1153–1154.

would be in contention with the spirit of the statutes and precedent in this area.[7] *See id.*

The court observes that the Fourth Circuit has held that the MVRA does not grant the district court discretion to reduce the amount of restitution by an amount seized from the defendant and retained by the government in administrative forfeiture. *United States v. Alalade,* 204 F.3d 536, 540–41 (4th Cir.2000). The court notes, however, that its ruling in this case does not conflict with the Fourth Circuit's decision because the funds obtained through administrative forfeiture in that case were not remitted to the victim, whereas, in the instant case, the government has remitted the forfeited funds to the victim. *Compare id. with* Defs.' Mot. at 1 and Gov't's Resp. at 2. In fact, the Fourth Circuit expressly limited its holding so as not to include the factual scenario in the case at bar, noting:

> Under the facts of this case, we need not decide, and we express no opinion on, the effect upon the district court's calculation of the full amount of a victim's loss under the MVRA *when the victim receives property or cash from the Department of Justice through its remittance program* involving property or cash seized by the government in administrative forfeiture in connection with the case.

204 F.3d at 541 n. 5 (emphasis added). Thus, *Alalade* exerts no influence on the court's determination of the issues presented here.

Similarly inapplicable to the case at bar is 18 U.S.C. § 3664(j)(2), which requires the court to reduce the amount of restitution ordered by any amount that the victim recovers after sentencing as compensatory damages for the same loss in any federal or state civil proceeding. 18 U.S.C. § 3664(j)(2). By its very terms, section 3664(j)(2) applies only to compensatory damages that the victim recovers after a court enters a restitution order in a civil proceeding. *Id.* In this case, however, the victim recovered the administratively-forfeited amount through the government's remittance program before the court ordered restitution at the defendants' respective sentencings. Defs.' Mem. at 2; Gov't's Resp. at 2. As a result, section 3664(j)(2) does not affect the court's ability to grant the defendants' motion.

In sum, the court finds no authority that limits its discretion to offset the total restitution award with the amount that the government remitted to CareFirst. Given the MVRA's instruction that the court compute restitution based on the victim's actual loss and guiding precedent that prohibits excess recovery, the court offsets the defendants' restitution obligation with the forfeited amount that the victim has received through the government's remittance program. *See* 18 U.S.C. §§ 3663A *et seq.; see also Corey,* 77 Fed.Appx. at 11; *Quillen,* 335 F.3d at 222; *Coriaty,* 300 F.3d at 252; *Seward,* 272 F.3d at 839; *Fore,* 169 F.3d at 110; *Parsons,* 141 F.3d at 393; *Menza,* 137 F.3d at 539; *West*

---

**7.** The court would reach an identical result had the defendants filed this motion at or before sentencing. According to 18 U.S.C. § 3663A, where property taken from a victim cannot be returned, an order of restitution shall require that the defendant "pay [to the victim] an amount equal to ... the greater of ... the value of the property on the date of damage [or] the value of the property on the date of the sentencing, less ... the value ... of any part of the property that is returned." 18 U.S.C. § 3663A(b)(1)(B). Thus, based on section 3663A(b)(1)(B), if the defendants would have moved the court to offset the restitution amount with the forfeited amount at or before the defendants' sentencings, the court would be required to apply that amount to offset the restitution award. *Id.*

*Indies Transp., Inc.,* 127 F.3d at 315; *Manzer,* 69 F.3d at 230.

Accordingly, it is this 28th day of October 2003,

**ORDERED** that the defendants' motion to apply forfeiture to restitution is **GRANTED**; and it is

**FURTHER ORDERED** that the forfeited amount of $86,830.80 be applied to offset the defendants' total joint and several restitution obligation of $138,571.00.

**SO ORDERED.**