[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-12369
Non-Argument Calendar
_____

D.C. Docket No. 5:12-cr-00019-RS-LB-1


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

MICHAEL WILLIAM JOSEPH, III,
a.k.a. Michael Joseph,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Florida
_____

(February 21, 2014)

Before CARNES, Chief Judge, HULL and MARCUS, Circuit Judges.

PER CURIAM:

While incarcerated in a Florida state prison, Michael Joseph, III, embarked on a lucrative, multi-year scheme to fraudulently obtain tax refunds from the Internal Revenue Service by filing scores of fabricated income tax returns using the personal information of other Florida inmates.  Following his indictment by a federal grand jury, Joseph pleaded guilty to 41 of the 46 counts with which he was charged:  one count of conspiring to defraud the United States government, 18 U.S.C. § 286; twenty-four counts of filing false claims against the government, 18 U.S.C. § 287; one count of conspiring to commit mail fraud, 18 U.S.C. §§ 1341 and 1349; and fifteen counts of theft of government property, 18 U.S.C. § 641. The counts to which Joseph pleaded guilty involved $173,016 in false refund claims, of which the IRS actually disbursed $37,196.27.  Before sentencing, the district court entered a preliminary order of forfeiture under 18 U.S.C. § 981 and 28 U.S.C. § 2461 for $29,514.91 in currency seized by government officials, which were the proceeds of Joseph's fraud.

Joseph's presentence investigation report (PSR) calculated a sentencing guidelines range of 51 to 63 months imprisonment and concluded that the Mandatory Victim Restitution Act of 1996 (MVRA), 18 U.S.C. § 3663A, required Joseph to pay $37,196.27 in restitution to the IRS.  He objected to the PSR on numerous grounds, including the restitution amount not being reduced by the value of the funds forfeited to the government.  The government countered that it was

2

entitled to obtain the full amount of restitution and also the full amount of forfeiture because they are both mandatory and serve distinct purposes — punishment in the case of forfeiture, compensation in the case of restitution.

At sentencing, Joseph reiterated his request that the $37,196.27 in restitution owed to the IRS be offset by the $29,514.91 subject to the preliminary order of forfeiture. The government again responded that Joseph was not entitled to that offset because forfeiture and restitution are "[t]wo separate matters." The district court initially seemed to agree with the government's position; it orally sentenced Joseph to 63 months imprisonment and ordered him to pay $37,196.27 in restitution to the IRS. At the end of the sentence hearing, however, the court stated that Joseph's restitution obligation would be offset by the $29,514.91 in funds already forfeited to the government, leaving a restitution balance of $7,681.36. The government objected to the court's ruling that the amount of forfeited funds be applied to partially satisfy Joseph's restitution obligation, reiterating its contention that forfeiture and restitution are "two separate things."

After the sentence hearing, the government submitted a "Notice of Filing" expressing "concern regarding the clarity of the record on the issue of forfeiture and restitution ordered at the time of sentencing." It asserted that, under the statutes governing restitution and forfeiture, the district court had no authority to offset the restitution amount by the value of forfeited funds; instead, the decision

3

of what should be done with the forfeited funds was left to the discretion of the United States Attorney General. The government asked the court to clarify its ruling regarding restitution in its written judgment. The district court, without explicitly addressing the government's objection or filing, later entered its written judgment, ordering Joseph to pay $37,196.27 in restitution to the IRS and directing the forfeiture of the $29,514.91 seized by government officials with no mention of the restitution amount being offset by the forfeited funds.

Joseph then filed a motion to clarify and amend the written judgment, noting that it did not conform to the district court's oral pronouncement at sentencing that the forfeited funds would be credited toward his restitution obligation. The district court denied the motion, stating that the judgment was "correct as written" and that the forfeited funds "shall not be applied to [Joseph's] restitution."

## I.

Joseph contends that we should direct the district court to amend the written judgment to conform to its oral pronouncement at sentencing that the $29,514.91 in forfeited funds would be applied toward his restitution obligation. He asserts that the district court not only had the authority to offset the restitution amount by the amount of the forfeited funds, but that it properly did so in its oral pronouncements at sentencing because the aim of restitution is to make the victim

4

whole, and, without the forfeiture offset, it is unlikely that he will ever be able to satisfy the full restitution amount.[1]

Joseph relies on the rule, which we inherited from our predecessor court, that when an oral pronouncement of a sentence unambiguously conflicts with a written judgment, the oral pronouncement controls. See United States v. Bonilla, 579 F.3d 1233, 1245 (11th Cir. 2009); United States v. Bates, 213 F.3d 1336, 1340 (11th Cir. 2000); Patterson v. United States, 386 F.2d 142, 142–43 (5th Cir. 1967).[2] Although we have sometimes stated this rule in categorical terms, as if it were an inexorable command, there is a longstanding exception to it when an oral pronouncement is contrary to law. For example, in Walker v. United States Parole Commission, 592 F.2d 905, 906–07 (5th Cir. 1979), we refused to give effect to the district court's oral directive, which was not contained in its written judgment, that the defendant's term of special parole would "commence upon the defendant's release from confinement" despite the general rule that "discrepancies in sentencing are to be resolved in favor of unambiguous oral pronouncements." We

---

[1] Joseph also contends that the government has waived any challenge to the district court's oral pronouncement at sentencing because it purportedly failed to contemporaneously object to the court's directive that the forfeited funds would be applied toward the restitution amount. That contention is unfounded. The government persistently argued — before, during, and immediately after sentencing — that the district court could not offset Joseph's restitution obligation by the amount of the forfeited funds. And the government is not challenging the oral pronouncement in this appeal; Joseph, the appellant, is challenging the written judgment's failure to offset his restitution obligation by the amount of the forfeited funds.

[2] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), we adopted as binding precedent all decisions of the former Fifth Circuit handed down before October 1, 1981.

did so because that oral directive was inconsistent with the plain language of 21 U.S.C. § 960(c), which mandated a special parole term "in addition to, not in lieu of," the defendant's general parole term. Id. at 906. And in Scott v. United States, 434 F.2d 11, 20 (5th Cir. 1970), we similarly explained that "regardless of what the federal judge either said or wrote as to when the [defendant's] federal sentence would begin, Congress itself has legislated on that precise subject. It is beyond the power of any judge . . . to vary the terms of that statute . . . ."

That exception applies in this case because under the plain language of the MVRA and the applicable forfeiture provisions, the district court had no authority to offset the amount of restitution owed to the IRS by the amount of the funds Joseph forfeited to the government. For designated offenses, including those involving fraud or where an identifiable victim has sustained a pecuniary loss, the MVRA requires a district court to "order restitution to each victim in the full amount of each victim's losses as determined by the court and without consideration of the economic circumstances of the defendant." 18 U.S.C. § 3664(f)(1)(A) (emphasis added); see also id. § 3663A(a)(1), (c)(1). The court must order full restitution "in addition to . . . any other penalty authorized by law," id. § 3663A(a)(1), and "[i]n no case shall the fact that a victim has received or is entitled to receive compensation with respect to a loss from insurance or any other source be considered in determining the amount of restitution," id. § 3664(f)(1)(B)

6

(emphasis added).  The MVRA permits a reduction in a restitution order only for an "amount later recovered as compensatory damages for the same loss by the victim in" a federal or state civil proceeding.  Id. § 3664(j)(2).

In addition to the restitution mandated by the MVRA, federal law also requires a district court to order the forfeiture of any property traceable to certain criminal offenses.  Id. § 981(a)(1) (providing that property traceable to certain criminal violations is "subject to forfeiture to the United States"); 28 U.S.C. § 2461(c) (providing that if a defendant is convicted of an offense for which civil or criminal forfeiture of property is authorized, "the court shall order the forfeiture of the property as part of the sentence in the criminal case").  Once property has been ordered forfeited, "[t]he Attorney General shall have sole responsibility for disposing of petitions for remission or mitigation with respect to [the] property," and is authorized to either "retain [the] property forfeited . . . or to transfer such property on such terms and conditions as he may determine," including "as restoration to any victim of the offense giving rise to the forfeiture."  18 U.S.C. § 981(d), (e).

We have held that a defendant is not entitled to offset the amount of restitution owed to a victim by the value of property forfeited to the government, or vice versa, because restitution and forfeiture serve distinct purposes.  See United States v. Bane, 720 F.3d 818, 827 n.8 (11th Cir. 2013) (rejecting a defendant's

argument that his restitution order should have been offset by the amount forfeited to the government); United States v. Hoffman-Vaile, 568 F.3d 1335, 1344 (11th Cir. 2009) (rejecting a defendant's argument that her forfeiture amount should have been reduced by the amount of restitution paid). While restitution seeks to make victims whole by reimbursing them for their losses, forfeiture is meant to punish the defendant by transferring his ill-gotten gains to the United States Department of Justice (DOJ). See United States v. Browne, 505 F.3d 1229, 1281 (11th Cir. 2007); United States v. Venturella, 585 F.3d 1013, 1019–20 (7th Cir. 2009); see also Libretti v. United States, 516 U.S. 29, 39, 116 S.Ct. 356, 363 (1995) ("Congress conceived of forfeiture as punishment for the commission of [certain] crimes.").

In light of the statutory framework governing restitution and forfeiture, we hold that a district court generally has no authority to offset a defendant's restitution obligation by the value of forfeited property held by the government, which is consistent with the approach taken by the Fourth, Seventh, Eighth, Ninth, and Tenth Circuits. See United States v. Martinez, 610 F.3d 1216, 1232 (10th Cir. 2010) (concluding that "the plain language of the MVRA . . . prohibits a district court from considering the value of defendant's forfeited property in initially determining the full amount of restitution," and further explaining that the MVRA makes "clear that funds the victims have not received cannot reduce or offset the

8

amount of losses the defendant is required to repay") (quotation marks omitted); United States v. McCracken, 487 F.3d 1125, 1128–29 (8th Cir. 2007) ("[T]he district court has no discretion to adjust the total restitution due to the victim based on funds held by law enforcement."); United States v. Bright, 353 F.3d 1114, 1120 (9th Cir. 2004) ("[U]nder the MVRA the district court could not have reduced or offset Bright's [restitution] obligation — certainly not for forfeited funds not paid over to his victims . . . ."); United States v. Alalade, 204 F.3d 536, 540 (4th Cir. 2000) ("[T]he plain language of the MVRA [does] not grant the district court discretion to reduce the amount of restitution required to be ordered by an amount equal to the value of the property seized . . . and retained by the government in administrative forfeiture."); United States v. Emerson, 128 F.3d 557, 566–67 (7th Cir. 1997) (declaring that a sentencing court has the statutory authority to impose both restitution and forfeiture, and that there is no legal authority to offset one from the other).

As we have already noted, the MVRA expressly requires a district court to order restitution in the full amount of a victim's losses and specifically prohibits the court from reducing that amount by the value of any other compensation received by the victim before entry of the restitution order. See 18 U.S.C. § 3664(f)(1). Given that, "it would be nonsensical for the district court to have discretion to reduce the amount of restitution by the value of property seized from

9

the defendant and retained by the government in [] forfeiture." Alalade, 204 F.3d at 540. The plain language of 18 U.S.C. § 981(d) and (e) also makes clear that the Attorney General alone has discretion to determine whether to retain forfeited property or apply it toward the restitution owed to the victims of a defendant's offense. [3]

While the MVRA does permit a reduction in a restitution order for amounts "later recovered as compensatory damages for the same loss by the victim in" a federal or state civil proceeding, 18 U.S.C. § 3664(j)(2), that provision has no application in this case for two reasons. First, § 3664(j)(2) applies only "to compensatory damages recovered by a victim in a civil proceeding after a court enters a restitution order," United States v. Ruff, 420 F.3d 772, 775 (8th Cir. 2005) (emphasis added), not when the court is initially ordering restitution for the victim's losses. See Alalade, 204 F.3d at 540 n.4 (explaining that § 3664(j)(2) "only comes into play after the district court has already ordered restitution in the full amount of the victim's loss"). Second, even assuming that the forfeiture of Joseph's funds could be construed as "compensatory damages," which we

_____

[3] In support of his contention that the district court had the authority to order the offset, Joseph relies on 18 U.S.C. § 981(c), which provides that "[p]roperty taken or detained under this section . . . shall be deemed to be in the custody of the Attorney General . . . subject only to the orders and decrees of the court or the official having jurisdiction thereof." 18 U.S.C. § 981(c) (emphasis added). That provision, however, refers to property seized before a forfeiture order has been entered. Subsections (d) and (e) of that same statute make it apparent that after a district court orders seized property forfeited, the Attorney General has sole authority to determine whether that property will be transferred "as restoration to any victim of the offense." See id. § 981(d), (e).

10

seriously doubt given the punitive nature of forfeiture, the Attorney General has not exercised his discretion to transfer those funds to the IRS, the victim of Joseph's fraud. See Bright, 353 F.3d at 1122–23 ("[W]hatever offsets might be due when a defendant's funds have been forfeited and paid to the victims . . . the MVRA provisions [] make clear that funds the victims have not received cannot reduce or offset the amount of losses the defendant is required to repay."). Although the Attorney General and the IRS are both part of the federal government, they are distinct entities. Cf. United States v. Taylor, 582 F.3d 558, 566 (5th Cir. 2009) (holding that the Federal Emergency Management Agency, the victim of the defendant's fraud, "is a distinct entity from the Department of Justice," which is headed by the Attorney General); Emerson, 128 F.3d at 567–68 (holding that the United States Postal Service is "an entity distinct" from the Department of Justice because it is "an independent establishment of the executive branch") (quotation marks omitted).[4]

---

[4] We need not decide whether a defendant would be entitled to a credit against his restitution obligation when the victim of his offense has received the value of forfeited property from the DOJ. While the MVRA does not specifically contemplate a reduction in restitution in such instances, at least one circuit has concluded that an offset would be required to prevent the victim from receiving a double recovery for a single loss. See Ruff, 420 F.3d at 775 (holding that while it is doubtful that forfeiture proceeds actually recovered by a victim could be credited against the defendant's restitution obligation under § 3663(j)(2), the "bar against double recovery should operate [in such a case] to preclude the [victim] from recovering an amount greater" than his or her loss); see also United States v. Huff, 609 F.3d 1240, 1249 (11th Cir. 2010) ("Restitution is not intended to provide a windfall for crime victims but rather to ensure that victims, to the greatest extent possible, are made whole for their losses.") (quotation marks omitted). In this case, the victim of Joseph's fraud — the IRS — has yet to recoup any of its losses from the forfeited funds held by the DOJ.

Because the district court had no authority to offset Joseph's restitution obligation by the amount of funds forfeited to the government, its oral pronouncement directing such an offset was contrary to law.  For that reason, Joseph cannot avail himself of the general rule that a discrepancy between an oral pronouncement at sentencing and a written judgment is to be resolved in favor of the oral pronouncement.  See Walker, 592 F.2d at 906.  We therefore affirm the district court's written judgment, which properly declined to offset the amount of restitution owed to the IRS by the funds Joseph forfeited to the government.

**AFFIRMED.**